Turner vs. Tapscott, adm'r.

TURNER VS. TAPSCOTT, adm'r.

1. SET OFF: *Of expenses of prior administration against admin. d. b. n.*
   In an action by an administrator *de bonis non* against an attorney for money of the estate, collected during a prior administration, the defendant may set off a judgment of allowance in the Probate Court against the former administrator for professional services rendered the estate.

2. ADMINISTRATION: *Allowance of Attorneys' commission for collecting, etc.*
   In order to entitle an attorney to retain a commission out of moneys of an estate collected under the employment of the administrator, he must show that the Probate Court authorized the employment, or sanctioned it by the subsequent allowance of the claim. And where such services are necessary to prevent loss or waste, it is the duty of the Court to allow compensation.

3. DEMURRER: *To an answer containing several paragraphs.*
   A general demurrer to an entire answer consisting of several paragraphs, each containing a separate defense should be overruled as to the whole answer if any paragraph presents a good defense.

4. PRACTICE: *Amendment of Evidence.*
   After the case was closed and submitted, the court permitted additional evidence, which had been omitted, to be introduced; Held that the matter was within the discretion of the court.

APPEAL from *White* Circuit Court.
Hon. JOHN WHYTOCK, Circuit Judge.
*J. M. Moore,* for appellant.

The second plea was simply one of set off and tender, and answered the whole demand. The judgments were proper set offs, also the other debt mentioned. *Higgs* v. *Warner,* 14 Ark., 193; *Burke's adm'r,* v. *Stillwell ex'r,* 23 Ark., 294; *Belfour* v. *Raney,* 8th Ark., 479.

As to second cause of demurrer see Gould's Digest, ch. 4, section 42.

Debts accruing against the administrator after death of intestate need not be probated. Equitable defenses must be pleaded since the adoption of the code. See Title 1.

The third paragraph sets up a debt and lien, which being confessed by demurrer is good. The third was a good and formal plea of tender.

The court erred in reopening the trial, after its finding, upon mere motion of plaintiff.

*Coody & McRae,* for appellees.

On the rule to sustain the finding as a verdict cited 25 Ark., 49; 26 Ark., 309; Rose's Digest, p. 659, sec's 45, 46; and specially as to findings 23rd Ark., 24; 27th Ark., 592; 2 Ark., 14; 5 Ark., 558.

On the right of the administrator *de bonis non* to recover, Gould's Digest, p. 111, sec. 43 and 44. The first administrator cannot encumber the assets as against a successor. 2nd Williams on Ex'rs, p. 822; 14 Ark., 296; 10 Ark., 254; 19 ib., 676; 17 ib., 567; 45 N. Y., 306; 6 Am. Rep., 90; *Bowen* v. *Pallivan,* 2 Rob., 385. There was no order of court for attorney's services Gould's Digest, p. 137, sec. 196; 27 Ark., 306; 15 Ark., 97.

The attorney must come in as a general creditor. *Waters* v. *Grace & Maury,* 23 Ark., 118.

The order of the Probate Court on the former executors was not in the nature of a judgment against the estate, but enforcible against them on their bond. Gould's Digest, p. 129, sec. 146-7 ; 5 Ark., p. 473 ; see also Gould's Digest, p. 128, sec. 43. The order was a nullity and void in a collateral proceeding. 8th Ark., 318. Only claims allowed against the estate, existing at the death, have the force of judgments ;. others are mere expenses of administration and credited on settlement. Gould's Digest, p. 120, sec's 97-148, p. 124, sec. 115 ; *Walker as adm'r* v. *Byers*, 14 Ark., 246.

The set off was not good for want of mutuality. 27 Ark., 478 ; 5 Ark., 54; 7 Ark., 331 and 523; 12 Ark., 378, 77; Waterman on Set off, p. 212, sec. 188, p. 389, sec. 556 ; 8 Watts, 74; 1 A. K. Marshall, 19 ; 6 Ala., 349 ; 1 Bailey, 599.

Ojections to evidence must be by bill of exceptions. 21 Ark., 454 ; 22 Ark., 225. Setting out the evidence. 1 Ark., 437, also p. 20 ; 3 Ark., 451 ; 27 Ark., 374. The action of the court was a matter within its sound discretion. Code, secs. 649, 657 ; 27 Ark., 328 ; 10 Ark., 428 ; 19 Ark., 239.

Appellee insists that this appeal must be dismissed, because it was taken before the clerk of this court on filing a transcript, when there had been an appeal granted by the court in session, and which was not perfected in the time allowed by law. In support of which he cited 27 Ark., 314, 348, 599 ; ib., 440, 599 ; 26 Ark., 474 415; 14 Ark., 422 ; 9 Ark., 129.

See Code, secs. 859 and 867.

WALKER, J.:

Tapscott, as administrator *de bonis non* of the estate of Adam McPherson, brought his action of assumpsit against Turner for money collected by him, on debts due the estate of McPherson. To this action defendant pleaded non-assumpsit, set off, payment and tender. Issue was taken upon the plea of non assumpsit,

and a demurrer was sustained to the other pleas. The case was submitted to the court, sitting as a jury. The decision or finding was for the plaintiff, and judgment thereon. The defendant moved for a new trial, and assigned, amongst other grounds, that the court erred in sustaining the demurrer to his several pleas, and in permitting additional evidence to be introduced after the case had been submitted to the court for its decision.

The sufficiency of the pleas or paragraphs of the answer, as termed by the Code practice, presents the only important question to be determined.

It appears that the notes placed in the hands of the defendant, as an attorney, to collect, belonged to the estate of McPherson; that the defendant had rendered services as attorney for the estate, and that he and his partner in the practice of law had rendered other services, for which an account was presented, approved and allowed by the Probate Court, against the estate of McPherson, and the executors of the estate ordered to pay the same as part of the costs of the administration. It further appears that defendant had also rendered services as an attorney for the estate in making certain collections, for which he claimed a commission for collection. He also claims to have paid part of the money collected to the executors. But before a settlement took place between the executors and the defendant, they resigned their trust, leaving part of the money so collected still in the hands of the defendant, and the claims so allowed, and ordered to be paid, and the commissions for collections, unpaid.

The administrator *de bonis non* brings this suit for the money, part of the unadministered estate in the hands of the defendant, and denies to the defendant the right to offset these allowances and fees against that much of the money in his hands belonging to the estate. And thus the question arises as to the validity of this defense, conceding the facts to be as stated in the pleas.

It is contended, on the part of the appellees that the fees and allowances made to the defendant belonged to the first administration, and must be settled (if at all) under it, and that the administrator *de bonis non* has nothing to do with it. That he takes only the unadministered assets and settles, alone, the costs of his own administration.

Let us consider whether this is true, and if true, whether the administrator *de bonis non* can take the unadministered assets, and hold them free from the payment of the adjudged costs and expenses of a former administration.

That an administrator *de bonis non*, can only take into his hands and administer upon the remaining unadministered property and effects of the intestate or testator, is beyond question, because that which has been administered by the former administrator, must be held as finally disposed of, and cannot become the subject of readministration. The administrator *de bonis non* is but the successor in trust, of the former administrator, he takes up the trust just where it was left by his predecessor in trust, when laid down by him; whatever the first administrator could or should have done in further administration, but which was left undone, his successor in trust may do also.

*Toller* in his work on Executors 242 say, an administrator *de bonis non* has also the same interest in such of the effects as remain unadministered, as was vested in the executor or antecedent administrator.

*Williams* on Executors, vol. 2, p. 865, says: The administrator *de bonis non* becomes the only personal representative of the deceased, and with respect to the estate left unadministered by the former executor or administrator, he has the same power and authority as the original representative; for he succeeds to all the legal rights which belonged to the former executor or administrator, in his representative character.

By our statute, Gould's Digest, ch. 4, sec. 42, it is provided that, if an executor or administrator shall die, resign, or his letters be revoked, an administrator *de bonis non* shall be appointed, "who shall perform the like duties, and incur the like liabilities as the former executor or administrator." The case of *Gentry* v. *Owen*, 14 Ark., 396, referred to by counsel, is in harmony with the elementary works above cited and with our own statute.

The case of *Underwood* v. *Milligan*, *adm'r*, 10 Ark., 254; *Burford* v. *Grimes adm'r*, 17 Ark., 567, and *Tiner, adm'r*, v. *Christian, adm'r*, 27 Ark. 306, have been cited by counsel as authority to show that the executors of the estate of McPherson could not, by contract for professional services, enlarge or increase the liabilities of the estate, and that the defendant should look to the executors in person, and not to the estate, for payment of the services rendered by him. These decisions are found upon examination (except the last named) to have but little application to the case under consideration. In the case of *Underwood* v. *Milligan*, a claim was presented to the Probate Court for allowance against the estate. The claim was for services rendered in taking care of cattle, in which the claimant seems to have had an interest. There was no evidence of a contract with the intestate, but it appears that the administrator promised that if the claimant would continue to take care of the cattle, he would allow his claim of $75.00 for doing so. Mr. Justice Scott, who delivered the opinion of the court, said that the proof of the agreement did not establish the account sought to be recovered of Milligan as administrator *de bonis non*, and that the claim was not a proper charge against the estate. In the case of *Burford* v. *Grimes, adm'r*, an account of medical services was presented to the Probate Court for services, part of which were to the family of intestate, and part for attendance on slaves the property of the estate. Chief Justice English, who delivered the

opinion of the court, said, when the administrator finds it necessary to call in medical assistance he has the right, and it is his duty to do so, not only as a matter of humanity, but by way of preserving them as property of the estate, and it would be the duty of the Probate Court to allow the administrator the reasonable and necessary expenses so incurred, as part of the costs of administration. And referring to the case of *Underwood* v. *Milligan*, remarked, that as between the administrator and the physician it would be a personal contract.

The facts in this case present a fit example for the distinction taken by the court, between contracts for services which should be charged against an estate as costs of administration, and such as render the administrator liable. Such as are necessary for the protection and preservation of the estate, and do not come within the appropriate duties of the administrator, as such, are proper charges against the estate, and cannot be considered as enlarging the liabilities of the estate by contract. But such contracts as are made by the administrator not in relation to the estate, as in the case of *Burford* v. *Grimes*, where part of the services were rendered to members of the family of the deceased, but not to property of the estate, the services if rendered at the instance of the administrator must be paid by him, not the estate; but when rendered for the protection and preservation of the slaves, it was a proper charge against the estate. The necessity for the services was urgent, and did not admit of delay until an order of court could be procured for that purpose. And upon like reasoning should the assistance of an attorney become necessary in order to protect the estate, or to prevent its loss or waste, as when replevin is necessary to regain possession of property, or where suit is brought against an estate, which requires that a defense should be interposed to prevent its loss, it would be the duty of the administrator, without an order

authorizing him to do so, to employ counsel, and when the services are rendered for the benefit of the estate, the Probate Court upon proof, should allow the attorney's fee as part of the necessary expenses of administering the estate. If fees under such circumstances are to be held as a personal charge upon the administrator, no counsel would be employed and the estate would be wasted.

The compensation allowed to the administrator for his services, are such as arise in the necessary discharge of the duties imposed upon him as a trustee, and for these he can not charge the estate for services rendered by another at his instance. It is certainly a part of his ordinary duty to collect the debts of the estate, if he can do so without suit, but he is not expected to perform the part either of lawyer or doctor, professional services rendered by them are not part of his trust duties. If an order of court has been made allowing the administrator to employ an attorney, the administrator may pay him, and present his receipt to the Probate Court as a voucher in settlement. But if it is absolutely necessary to employ counsel to sue, or to defend, and the fact is made to appear to the Probate Court, after the service is rendered, the court may in its sound discretion allow the fees as part of the expenses of administration.

It is not alone in this respect that allowances should be made. Suppose the intestate should die leaving a crop of cotton or corn matured, but not gathered. It would certainly be the duty of the administrator to have the cotton picked, and ginned, and the corn gathered and housed. These are not part of the trust duties for which the administrator is compensated by his per centum on the amount administered. These services might, and, in some instances, would amount to more than the whole compensation allowed for administering the estate, and, unless allowed compensation for this service, the result would be that the crop would be lost.

In these, and all other cases, the question to be determined is,

*First*—Were the services rendered such as belonged or appertained to the ordinary duties of the administrator? If they were, then, if he employ another to do them for him, it is a personal charge upon himself, and not upon the estate; and,

*Second*—Were the services in fact rendered, and were they necessary in order to protect and preserve the estate? If they were, it is the duty of the Probate Court, upon proof that such was the case, to allow the claim as part of the expenses of the administration.

Our statute, which requires that attorney's fees shall not be paid out of the assets of the estate, unless the services are rendered under an order of court, must be construed with reference to the evil intended to be remedied, and particularly refers to the collection of debts. Ch. 4, sec. 194, Gould's Dig., provides that when, in the opinion of the court, it shall become necessary to employ an attorney he shall only receive the per centum for collecting therein declared. The 195th section, under like circumstances, allows the same fees for defending that are allowed for collecting, and the 196th section provides that such fees shall be allowed as expenses of administration, but that no attorney's fees shall be allowed any administrator, unless for the prosecution or the defending of suits *under the direction of the court*. These several provisions were evidently intended to remedy a great evil which had grown into practice in this State, of allowing administrators and executors to employ attorneys to collect the debts due the estate, even when no suit was necessary for that purpose. It is a part of the ordinary duty of the executor or administrator to collect all of the debts which may be collected, at least without suit, and it was to prevent this abuse of trust that the act was passed, as well as for all other services properly to be performed by the administrator in his trust capacity, and

not to employ an attorney in any case unless necessary for the protection of the estate, to be determined by the Probate Court in advance of the employment, or, in cases of emergency, afterwards.

It has not escaped our observation, when looking over the evidence in this case, that the debtor offered to pay to the executor part of the money, now the subject of this suit, and for the collection of which a commission is claimed, and that the executor, instead of receiving the money, referred him to the defendant, who held the note for collection. Under such circumstances, if the executor chose to employ an attorney to make the collection, he should pay the expenses of the collection himself, and not charge the estate with its collection. But, as we have already said, when the collection could only be made by suit, in which the services of an attorney were necessary, in order to collect the debt, we think the Probate Court, under a fair and liberal construction of the statute, whether a previous order had or not been made, authorizing the administrator to employ counsel, would, in its sound discretion, be authorized to allow the claim for fees as a part of the necessary expenses of the administration ; and this conclusion is in harmony with the decision of this court in the case of *Burford* v. *Grimes.*

In the case of *Tinor, adm'r.,* v. *Christian, adm'r.,* it was held that, in order to charge the estate of an intestate with attorney's fees, they should accrue under an order of court authorizing the administrator to employ an attorney.

By reference to the facts under which this decision was made, it does not conflict with the construction given by us to this statute. It does not appear in that case that it was shown to the court that a necessity existed for employing counsel. And it will be seen that in all of the cases above cited, the contest arose before the Probate Court for an allowance for services rendered,

and in determining which, the Probate Court exercised its discretion, so as to prevent an abuse of the trust, and at the same time to facilitate its due execution.

So far, however, as regards the amounts claimed as a set off in the first and second paragraphs of the defendant's answer we apprehend this question cannot arise, because the claims for the services rendered have been established and allowed by the Probate Court. It was a matter within its jurisdiction, and we must presume that all of the requirements of the law were complied with. The orders of allowance must, therefore, stand, and cannot be collaterally inquired into in this suit.

As regards the third paragraph, which sets up a claim for commissions in the collection of the money for which the suit is brought, the state of case is different. It is expressly provided by the statute, that "no attorney's fees shall be allowed by any executor or administrator, unless for the prosecuting or defending a suit under the direction of the court." And it is not averred that they were rendered under an order of court, or that the question, as to the necessity for the services of an attorney, was, at any time, presented to the Probate Court, or decided by it, and, for the lack of such averment, the plea is bad.

In the further consideration of the question connected with the sufficiency of the answers, it will perhaps be best to consider the structure of the several paragraphs and the scope of the objection taken to them.

The first paragraph, as amended, is as follows: "The said defendant says that on the 17th day of August, 1866, while the said Lewis S. Poe and William H. Bradshaw were the executors of the last will and testament of the said Adam McPherson, deceased, this defendant, by the consideration and judgment of the Probate Court of said County of White, duly given, did recover of and against them in their representative capacity, as

such executors, the sum of $470.26, which was then and there, by said court, duly adjudged and allowed to the defendant for the professional services of him, as an attorney at law, before then rendered for said executors, in and about the business of said estate, of said deceased, and was by said court ordered to be paid out of the assets of said estate, as expenses of said administration; which said judgment is still in full force, not satisfied, set aside or otherwise vacated; that the assets of said estate, then in the hands of said executors, which have since then come to the hands of said plaintiffs, were and are, in amount and value, far more than sufficient to pay all costs and expenses then or since accrued, in the administration of said estate. And defendant asks to be allowed the amount of said judgment and interest in estimating and ascertaining the amount due from him to said plaintiff, and for other proper relief.

*Second*—And for further answer, defendant says that on the 17th day of August, 1866, he and one William G. Turner, who were then partners as attorneys at law, under the firm name of W. G. & B. D. Turner, did, in their said firm name, recover against the said Lewis S. Poe and William H. Bradshaw, in their representative capacity as executors of said deceased, by the judgment and order of the said Probate Court of White county, duly made and rendered, the sum of $93.70, which was then by said Probate Court duly adjudged and allowed to said W. G. & B. D. Turner for professsional services by them as such attorneys, before then rendered to and for said executors in and about the business of said estate of the said deceased, and was by the said court ordered to be paid by said executors out of the assets of said estate, as expenses of administration thereof, which said judgment and order is still in full force and wholly unsatisfied. And defendant says that after said services were rendered, and before the recovery of said judgment, they dissolved their said

partnership, and said W. G. Turner assigned and transferred all his right, title and interest in and to the assets, debts and demands due and owing to said partnership to defendant, B. D. Turner. But that said judgment was obtained in the name of said firm, because the legal title was in it, but that the real, sole and exclusive interest in said judgment belongs to defendant, to the entire exclusion of said W. G. Turner; and he further says that, at the time of said judgment, there were in the hand of said executors, and have since come to the hands of plaintiff, assets of said estate largely in excess, in amount and value, of all costs and expenses then or since accrued in the administration of said estate, and said defendant prays that he be allowed the amount of said judgment and interest thereon in estimating the amount due from him to said plaintiff and for other proper relief.

*Third*—Said defendant further states that said plaintiff is indebted to him in the further sum of $107 for services rendered in collecting the money now sued for by said plaintiff, and which is a lien thereon, and he asks that said sum be allowed him in estimating the amount due in this suit.

*Fourth*—Defendant further states that before the institution of this suit he paid the plaintiff the sum of $506 of said money sued for, and asks that said payment be allowed in estimating the amount due said plaintiff.

*Fifth*—Defendant further states that, before the institution of this suit, he tendered and offered to pay to said plaintiff the sum of $243.46, the whole amount due from him to plaintiff, which was refused by the plaintiff, and the defendant has ever since then been ready and willing to pay the same to the plaintiff, and now here brings the same into court, and here tenders the same to the plaintiff.

These are the five pleas pleaded in bar of the plaintiff's action.

The first and second paragraphs are substantially pleas of set-off, with the sole difference that one sets forth an allowance by

the Probate Court for professional services rendered by the defendant, whilst the second paragraph sets out an allowance to defendant and his partner in the practice of law, and that his partner's interest in the debt was assigned to him. The judgment of allowance were defendant's; they were against the estate of McPherson, and ordered to be paid out of the assets of the estate. It is insisted that because they were rendered against the former executors of the estate, that they should have been settled by the executors before they resigned, and that the plaintiff, as administrator *de bonis non*, took the unadministered estate free from liability for such costs and expenses.

In order to test the correctness of this assumption, let us suppose that before the executors resigned their trust they had called upon the defendant, who held money belonging to the estate, for the money, and he had presented these claims, so allowed and ordered to be paid, and the executors had paid them in settlement out of the money in defendant's hands, and taken from him a receipt for the payment of them. We think there could be no doubt but that such receipt would have been a good voucher in settlement with the court; it would have been a payment made in obedience to the order of court. It was a debt between the estate of McPherson and the defendant, each holding a demand against the other, and if these judgments of allowance were proper charges upon the assets of the estate of McPherson, in the hands of the executors, upon the appointment of a new trustee, the administrator *de bonis non*, who succeeded to all the rights to the unadministered estate as fully as they existed in the hands of the executors, he took the assets of the estate unadministered, charged with the payment of the expenses of the administration; he was, in fact, but the successor in trust, and took the administration upon himself just where it was left by his predecessors in trust.

Turner vs. Tapscott, adm'r.

The paragraph was drawn with commendable accuracy, and bears the impress of something more than a mere Code practitioner. We think these paragraphs, or pleas of set off, good, and the demurrer to them should have been overruled.

The third paragraph is also a plea of set off for services rendered in collecting the money for the recovery of which suit is brought, but there has been no allowance of it by the Probate Court, nor is it averred that the services were rendered under an order of court, or that an allowance was subsequently made, and for want of this averment this paragraph was fatally defective.

The fourth paragraph was a plea of part payment, and the fifth is a plea of tender. The first went to part payment of the sum in controversy; the second a tender of all that was due. Both of them are well pleaded, and the demurrer to them should have been overruled. Whether they can or not be sustained in evidence is not for our consideration; the demurrer admits the truth of them, and we, in passing upon their legal sufficiency, must consider them as true.

Having thus concluded the investigation of these several pleas upon their merits, there is a question of practice to be settled: When a demurrer is interposed to an answer which contains several paragraphs or pleas, each paragraph in a complaint stands in the place of a count in a common law declaration, and must contain within itself a cause of action. So any paragraph in an answer, like a common law plea, must contain a valid defense. We have seen that the answer in this case contained five paragraphs, or special pleas.

The demurrer is to the answer generally, to the whole answer, and not severally to each paragraph, or any one of them, and, consequently, if there is a good paragraph in the answer the demurrer must be overruled.

Newman, in his work on Pleading and Practice, page 660, says: "When the petition contains several paragraphs, each containing a separate cause of action, if the demurrer be general to the whole petition, and any one or more of the paragraphs show a good cause of action, the demurrer cannot be sustained, even if there be some of the paragraphs, or alleged causes of action which are insufficient. And if there are several defenses in the same answer, and the demurrer be to the whole answer, it must be overruled if any one of the defenses be good, although others be insufficient.

In the case before us, the demurrer, in the first instance, was to the whole answer, and as several of the paragraphs were unquestionably good, the demurrer should have been overruled as to all of them; but after this leave was given the defendant to amend the first and second paragraphs of his answer, the amendment was made, and a joint demurrer was filed to them and sustained.

The third, fourth and fifth paragraphs were not amended, and defendant stood upon the first demurrer. We have seen that the third paragraph was demurrable, the fourth and fifth good. The demurrer being general, should have been overruled as to all of them.

The remaining question is as to the practice of suffering additional evidence to be given after the parties have closed the evidence and submitted the case, but before the court had rendered its verdict. The evidence omitted was to prove a demand of payment before action brought. The Code practice is liberal with regard to amendments when the object is to obviate an omission, either in pleading or evidence, if amended or allowed, which would tend to facilitate the final disposition of the case upon its merits. The defendant could not have been surprised.

A material fact had not been proven, and it was a matter of discretion with the court to allow its introduction or not, and, under the circumstances, we think there was no abuse of this discretionary power in permitting it to be introduced.

Because the court erred in sustaining the demurrer to the defendant's answer, the judgment must be set aside and a new trial granted.