STATE *v.* MIDLAND VALLEY RD. COMPANY.

4-5282                                    122 S. W. 2d 173

Opinion delivered December 5, 1938.

*Jack Holt,* Attorney General, and *George Vaughan,* for appellant.

244

*Thos. B. Pryor, Miles, Armstrong & Young* and *O. E. Swain,* for appellee.

MEHAFFY, J. This is a suit by the State of Arkansas to collect back taxes alleged to be due from the appellee, Midland Valley Railroad Company.

Complaint was filed in the chancery court of Sebastian county on July 29, 1935. On August 17, 1935, the appellee filed a demurrer to the complaint which was by the court overruled on May 8, 1936. On June 10, 1936, answer was filed and on June 20, 1936, the appellant filed amendment to complaint, and also filed a supplemental complaint with interrogatories. The corporation commission had authorized the bringing of the suit and the appellee filed petition before the corporation commission requesting that it recall the order to sue, which the commission declined to do.

The appellant took the deposition of Mr. C. J. Ingersoll. Mr. Ingersoll testified that he is chairman of the board of directors of the Midland Valley Railroad Company, with which he has been connected since 1920, first as assistant to the president for 12 years, and since that time as chairman of the board. The deposition of Mr. Ingersoll was taken at Philadelphia by agreement on interrogatories. He testified in substance that the Midland Valley Railroad Company was incorporated June 4, 1903, in the state of Arkansas, and attached to his deposition a copy of the charter and articles of incorporation. He gave the names and addresses of the officers and directors of the railroad company during each year from 1930 to 1936, inclusive, with the number of shares and classes of stock controlled by each; that the corporate and financial records and books of account are kept in the custody of officers of appellee at its offices in Muskogee, Oklahoma, and Philadelphia, Pennsylvania; that the president and vice-president have free access to the financial files, records and books of account. The company's seal is kept by the secretary in his office in Philadelphia. The chief accounting officer is Mr. E. B. Harper. Witness has full directing control, management and supervision of the transportation operations and financial affairs of the appellee. Witness then gives a statement of prop-

erty, assets, in the form of moneys and credits consisting of $1,124,901 cash in bank subject to check; that this money was held and used by the railroad company in the operation of its lines as a common carrier and this sum constituted the working fund growing out of the operation of the company as a common carrier; that on January 1, 1931, there existed at various places outside the state of Arkansas what is classified by the Interstate Commerce Commission as cash and loans and deposits in the sum of $671,183; that all this constituted working funds growing out of and held and used by the company in the operation of its lines as a common carrier and meeting its obligations growing out of its utility operations. The testimony as to the other years was substantially the same as he said that the sole business of the appellee was common carrier by rail, and that this business was in full activity then and now absorbing all the resources of the company. The appellee makes annual written reports to the Interstate Commerce Commission and to the Arkansas Corporation Commission; the reports in question do not purport to give value and do not do so; the reports are true and correct to the best of witness' knowledge and belief. The reports to the Interstate Commerce Commission and to the Arkansas Corporation Commission do not purport and do not differentiate between what is alleged in the question as being earned from transportation operations, on the one hand, and derived from non-carrier properties or activities on the other. All of the income of the company is applicable to and used in its sole activity, that of operating a public utility. Witness then gives a list of stocks of other corporations held by it and also the number of bonds, and their value. The returns from the bonds have been commingled with the company's revenue and used by it in paying expenses of its utility operations, and but for such returns in the last few years the railroad would not have been able to pay its fixed charges; witness testifies at length about its relationship with the Muskogee company, in what capacity it has been connected with said company, and what amount of the total, common and preferred stock of the company is owned by the Musko-

gee company in the years 1930 to 1936, inclusive; that these matters are reported to the Arkansas Corporation Commission each year and the figures here are the same as in the report made to the commission. Witness testified that the report to the Arkansas Corporation Commission showed the items with reference to its current, as distinguished from its deferred liability, and gave the figures; also showed its capital and surplus. Witness also testified at length and in detail about the outstanding preferred stock, the preferences to which the holders of said stock are entitled, a tabular statement of the amount and rate of dividends declared and paid on its preferred stock each year from 1930 to 1936, inclusive, and also the same with reference to the common stock; that the first mortgage of the Midland Valley Railroad Company to Girard Trust Company, trustee, is $15,000,-000, and mortgaged to the Fidelity Company in the sum of $5,512,500.

This is the only evidence introduced by the state, and it shows that the indebtedness is in excess of the value of the property it owns.

There were other pleadings filed later, but on March 7, 1938, the cause was submitted to the chancellor and time given both parties to file briefs. After the submission and after the briefs had been filed the appellant, on June 14, 1938, filed motion for an order authorizing resumption of the taking of testimony, examination of defendant's officials, and for the production of books and papers, and the appellee filed motion to strike and to dismiss; whereupon the court entered the following decree:

"On this day the above cause coming on to be heard comes the plaintiff by George W. Vaughan, attorney, and also comes the defendant by its attorneys, and the cause being submitted to the court upon the complaint and exhibits thereto; the answer of the defendant; the deposition of C. Jared Ingersoll and the exhibits attached thereto; and on the motion of the defendant to strike from the files plaintiff's reply to the second amended answer the supplemental complaint, and the motion for an order authorizing resumption of taking of testimony, examination of witnesses and for the production of books

and papers, and the court being well and sufficiently advised in the premises, and this cause having been submitted to the court on March 7, 1938, and the court having taken the same under advisement, after allowing time to both parties in which to file briefs, and after said briefs were filed, the plaintiff then filed its reply to the second amended answer, the supplemental complaint and the motion for an order authorizing resumption of taking of testimony, examination of witnesses and for the production of books and papers; and said pleadings on behalf of the plaintiff were not filed until June 14, 1938, which was after all briefs were filed, and defendant then filed its motion to strike said pleadings from the file, and the court is of the opinion that said motion to strike filed on behalf of the defendant should be sustained, and is of the further opinion that the plaintiff's complaint should be dismissed for want of equity.

"It is, therefore, considered, ordered, and decreed by the court that said motion to strike be and the same is hereby sustained, and thereupon the court, having considered the deposition of C. Jared Ingersoll, which was all the evidence introduced in the cause, and after hearing the arguments of counsel and having considered the briefs on file, it is ordered, adjudged and decreed that the complaint of the plaintiff be, and the same is hereby dismissed for want of equity, and it is further ordered that the defendant have and recover of and from the plaintiff all of its costs herein expended, to all of which the plaintiff excepted."

The case is here on appeal.

The complaint stated a cause of action and the dedemurrer was, therefore, properly overruled by the court. The pleadings of the appellee were not verified, but this was a mere formal matter and if motion had been made the court would doubtless have required a verification of the pleadings.

This court said in the case of *Coleman* v. *Bercher,* 94 Ark. 345, 126 S. W. 1070: "The omission of the plaintiff or her attorney to sign the complaint, and the omission of Hiner in the affidavit attached thereto to state that he was plaintiff's attorney, were mere formal

defects or clerical mistakes which could not affect the rights of the parties in a trial on the merits of the case; and the motion to correct the same, having been seasonably made, should have been allowed by the court as a correction of mistake, under § 6245 of Kirby's Digest, and thus have cured the defect.

"To illustrate, our Civil Code provides that a complaint must contain the style of the court, but the court has held that the omission to do so is a mere formal error. *McLeran* v. *Morgan*, 27 Ark. 148."

This court said in another case: "The answer upon which the motion was based does not appear to have been verified. That would not have been regarded as sufficient to have justified striking it from the files, or to have prevented a consideration of its contents, unless there had been a refusal to verify after order made to do so." *Jackson* v. *Reeve*, 44 Ark. 496.

Appellant complains because it says the appellee failed to answer interrogatories, but this matter does not seem to have been called to the attention of the court, and the parties themselves were endeavoring to reach an agreement as to the facts.

The appellant filed a motion to require the attendance of witnesses and the production of books. If this motion had been made in time, the state would have been entitled to an order of the court to produce books alleged to contain evidence pertinent to the matter in controversy. Section 5152, Pope's Digest. But this motion was not made in time. The decree recites that it was after the case had been submitted and briefs had been filed by both sides.

The appellant asked in its motion not only for the production of books and the examination of appellee's officials, but for an order authorizing the resumption of the taking of testimony. This motion was made on June 14, 1938, nearly three years after the complaint was filed and after the case had been submitted and both parties had filed briefs. The granting or refusing to grant this motion was within the discretion of the trial judge. Of course his discretion must not be abused, and when abused is subject to review by the appellate court.

"The judge is not to be restricted to the function of a mere umpire or referee in a contest between opposing parties or counsel, but is charged by law and conscience with the fundamental duty of seeing that truth is established and justice done, under the statutes and rules of law designed to bring about such result, and his control of the situation should be manifest and complete at all times." 64 C. J. 66.

"The trial judge must always have a very large discretion in controlling and managing the routine proceedings at the trial, and it is not necessary to specify the matters to which such discretion extends. It applies beyond doubt to the addresses of counsel as well as to other incidents. But it must be a reasonable, a legal, discretion, and whether it be so or not must depend upon the nature of the proceeding on which it is exercised, the way it is exercised, and the special circumstances under which it is exercised. It can never be intended that a trial judge has purposely gone astray in dealing with matters within the category of discretionary proceedings, and, unless it turns out that he has not merely misstepped, but has departed widely and injuriously, an appellate court will not re-examine. It will not do it when there is no better reason than its own opinion that the course actually taken was not as wise or sensible or orderly as another would have been." *Coca-Cola Bottling Company of Ark.* v. *Jordan,* 186 Ark. 1006, 54 S. W. 2d 403.

At the trial the appellant introduced the deposition of Mr. Ingersoll and rested. The case was submitted to the court, and three months after that time the motion was filed. The court did not abuse its discretion in refusing to re-open the case and permit the taking of more testimony.

The evidence of Ingersoll is not disputed and it shows that all of the property mentioned by the state as subject to taxation is used in the utility operation of the company. Section 2051 of Pope's Digest provides that all property, real and personal, not used in the utility operation of the company as such, shall be listed and assessed by the assessor. Whether any of the prop-

erty mentioned by the state was not used in the utility operation of the company was a question to be determined from the evidence, and the only evidence in the case shows that the property mentioned was used in the utility operation of the company.

The decree of the chancery court is not against the preponderance of the evidence, and it is, therefore, affirmed.