MIDWEST LIME COMPANY *v.*
INDEPENDENCE COUNTY CHANCERY
COURT and Robert DUDLEY, Judge Thereof

76-380                                    551 S.W. 2d 537

Opinion delivered May 31, 1977
(Division II)

*Barber, McCaskill, Amsler & Jones,* and *Harkey, Walmsley & Belew,* for petitioner.

*Hodges, Hodges & Hodges,* by: *David Hodges,* for respondent.

JOHN A. FOGLEMAN, Justice. Warren McSpadden and numerous others filed their complaint against Midwest Lime Company alleging that the company's agricultural limestone business was operated in such a manner that it constituted a private nuisance and caused damages to the various plaintiffs. They sought injunctive relief to either stop blasting operations carried on by petitioners or to control the operation so it would not constitute a nuisance. They also sought recovery for structural damages and damages caused by the alleged nuisance. During the 4 ½ year period between the commencement of the hearings in the case and the entry of the decree, plaintiffs were added and eliminated; 27 days were devoted to hearing testimony and arguments of counsel, between June 1972 and June 19, 1974; and four memorandum opinions were handed down by the chancellor, before a decree on one phase of the case, i.e., the prayer for an injunction, was rendered on November 19, 1976.

We must depend upon the chancellor's opinions and the court's decree as the record of the proceedings in determining the questions raised by petitioner's request for a writ of prohibition, or, alternatively, a writ of certiorari. By these writs, or one of them, petitioner seeks to prevent the chancery court from proceeding to rehear the question of its liability for damages and to fix the damages in separate trials for each parcel of property for which damages are sought by the remaining plaintiffs. For the reasons later stated the writs are denied.

During the 27 days of testimony, evidence had been directed toward the issues of nuisance and liability. The decree finally entered enjoined petitioner from operating its business except under carefully specified conditions enumerated in the decree but directed that the issue of liability for structural damages, as a result of the operation of the nuisance of blasting that had been carried on by petitioners, be retried and that the case of each individual plaintiff be separately tried. Petitioner contends that this decree requires the presentation of evidence a second time to the same trier of

fact and that the court has acted without jurisdiction, or in excess of its jurisdiction, in ordering a retrial and mandating separate trials. It argues that, in effect, the court has granted a new trial and that, not only does the chancery court not have authority to do so, but, even if the statute governing new trials is applicable to a case in the chancery court, the basis for ordering the case retried, i.e., the chancellor's inability to render a decision on the evidence previously submitted, is not a proper ground for a new trial. Petitioner also argues that it will be forced to go through some 45 retrials for the apparent reason that the evidence failed to convince the chancellor. This, say petitioners, means that the plaintiffs failed to meet their burden of proof; therefore, it is a gross abuse of the trial court's discretion to order a retrial.

The first memorandum opinion concerned the injunctive phase of the case. It was handed down on July 3, 1974. It recited that 79 plaintiffs had filed the complaint, that six additional persons were later added as plaintiffs, that 22 of the plaintiffs were allowed to dismiss their causes of action without prejudice and that judgments on the evidence had been rendered against others. The chancellor stated that, upon stipulation of the parties, the court had, on the 27 days after hearings were commenced, heard the evidence necessary to rule on the injunctive and liability phase of the case and found that petitioner's operation was a nuisance and directed that certain types of explosions be enjoined and others, along with petitioner's crushing operations, be permitted under specified conditions only. The chancellor specifically recited that jurisdiction was retained for the entry of such additional orders as might be necessary, and that the injunctive order would be final and appealable.

In another memorandum opinion handed down on August 30, 1974, the chancellor recited that 79 plaintiffs had originally complained of damages to 39 structures, that additional plaintiffs had been added, claiming damages to additional buildings, while others were allowed to dismiss their actions. The chancellor said that the court "with a blundering and blind lack of foresight" had concurred in the joint request of the parties that the court rule first on the question of liability to the separate plaintiffs and, if liability was found,

then rule on damages to each structure. The chancellor stated that the rationale for the procedure was to relieve each side of the economic burden of having expensive expert witnesses present for 39 different trials, but that the case, as tried, was so complex that he was unable to reach a sound, well-founded and accurate opinion in each of the cases, and the finder of fact had become inextricably mired in a mass of evidence in which proper retrieval and sorting into structural damage categories had become impossible. He concluded that the portion of the suit going to damages as to the structures resulting from blastings should be tried as a separate tort suit or suits before a jury and requested that the attorneys prepare an order of transfer. Then on July 18, 1976, the chancellor rendered another opinion stating that, after reviewing objections of the plaintiffs to the order of transfer, it appeared best that the case not be transferred and requested the attorneys to prepare an order setting the individual damage cases for trial in the chancery court.

During all this period, no decree had been entered. The decree dated November 19, 1976, was filed November 22, 1976. It recited that the matter had come on for hearing on June 5, 1972, and had been argued orally on June 19, 1974. The decree incorporated the chancellor's directions as to the injunction and listed 45 plaintiffs to whom the petitioner was liable for operation of a private nuisance and stated that they were entitled to present proof of nuisance damages at dates to be set by the court. The decree repeated the statements of the chancellor's opinion as to the court's inability to reach an accurate opinion in each of the cases of the separate plaintiffs, adding that the situation was compounded by the fact that the court reporter who had taken the 27 days of testimony in 1972 had thereafter retired and that the accurate transcription of her notes and tapes was extremely difficult, if at all possible. The court directed verdicts against four plaintiffs on the issue of liability for damages, and directed that the entire issue of liability for damages be retried and that the case of each plaintiff be tried separately. The court again recited that the injunctive order in the decree was appealable.

We do not agree with petitioner in its classification of the court's action as the granting of a new trial. A new trial is

defined by statute as a reexamination in the same court of an issue of fact after a verdict by a jury or a decision by the court. Ark. Stat. Ann. § 27-1901 (Repl. 1962). Here no decision has been reached. We agree with respondent that its action in the matter is more aptly equated with declaring a mistrial than with the granting of a new trial. A mistrial is a proceeding which has miscarried and the consequence is not a trial. *Sevlesruo Holding Corp.* v. *American Equitable Insurance Co.*, 11 N.J.S. Misc. 334, 165 A. 729 (1933); *Fisk* v. *Henarie*, 32 F. 417 (Cir. Ct., Ore., 1887). The term is sometimes used to describe any trial which does not result in a lawful decision, but which a proper decision would have completed. *Sevlesruo Holding Corp.* v. *American Equitable Insurance Co.*, supra; *People* v. *Schwarz*, 78 Cal. App. 561, 248 P. 990 (1926). The distinction between a new trial and a mistrial is clearly pointed out in § 1c, New Trial, 66 C.J.S. 65, viz:

> *** There is a marked difference between a court's granting a motion for a new trial and declaring a mistrial; the former contemplates that a case has been tried, a judgment rendered, and on motion therefor said judgment set aside and a new trial granted, while the latter results where, before a trial is completed and judgment rendered, the trial court concludes that there is some error or irregularity that prevents a proper judgment being rendered in which event a mistrial may be declared.

A mistrial is declared because of some circumstance indicating that justice may not be done if the trial is continued. *Curley* v. *Boston Herald-Traveler Corp.*, 314 Mass. 31, 49 N.E. 2d 445 (1943); *Long* v. *City of Opelika*, 37 Ala. App. 200, 66 S. 2d 126 (1953).

It is doubtful that a motion for new trial is appropriate in chancery cases, but there is no doubt that the granting of a new trial in such a case lies within the sound discretion of the court. *Rinke* v. *Shackleford*, 248 Ark. 941, 455 S.W. 2d 83; *Barton-Mansfield Co.* v. *Richardson*, 190 Ark. 612, 80 S.W. 2d 60; *Jacks* v. *Adair*, 33 Ark. 161.

A bill of review or petition for rehearing in chancery cases performs somewhat the same function as a motion for

new trial in law cases and all such pleadings are addressed to the sound judicial discretion of the trial court. *Richardson* v. *Sallee*, 207 Ark. 915, 183 S.W. 2d 508. But neither has application to the discretion of a chancellor to reopen a case before the entry of final decree upon the record. *Kennedy* v. *Kennedy*, 243 Ark. 773, 421 S.W. 2d 611. This is a matter lying within the sound judicial discretion of the chancery court and not a matter outside or in excess of its jurisdiction.

Even in a jury trial, the reopening of a case for further proof, after both sides have rested, is a matter lying within the sound discretion of the trial court. *Troxler* v. *Spencer*, 223 Ark. 919, 270 S.W. 2d 936. In a non-jury trial, the latitude of the court's discretion to hear further evidence when the court has the case under submission after trial but before any judgment has been entered is quite broad. *Pulaski County* v. *Horton*, 224 Ark. 864, 276 S.W. 2d 706. This procedure in a trial without jury first addressed itself to this court in *Turner* v. *Tapscott*, 30 Ark. 312 (overruled on another point by *Pike* v. *Thomas*, 62 Ark. 223, 35 S.W. 212), where we said:

> The remaining question is as to the practice of suffering additional evidence to be given after the parties have closed the evidence and submitted the case, but before the court had rendered its verdict. The evidence omitted was to prove a demand of payment before action brought. The Code practice is liberal with regard to amendments when the object is to obviate an omission, either in pleading or evidence, if amended or allowed, which would tend to facilitate the final disposition of the case upon its merits. The defendant could not have been surprised. A material fact had not been proven, and it was a matter of discretion with the court to allow its introduction or not, and, under the circumstances, we think there was no abuse of this discretionary power in permitting it to be introduced.

It has been said that courts should exercise their discretion as to the admission of evidence pertinent to a material issue in the case for the advancement of the right and to the end that justice may be done conformably to the laws and that refusing to allow testimony under appropriate cir-

cumstances is not a proper exercise of judicial discretion. *St. Louis, A. & T. Ry. Co.* v. *Fire Association of Philadelphia,* 55 Ark. 163, 18 S.W. 43. On the other hand, the court's purpose in admitting testimony in order to ascertain the truth of the matter to be determined is an important consideration militating against our finding of an abuse of discretion. *Nutt* v. *Fry,* 119 Ark. 450, 177 S.W. 1137. Even admission of evidence after the jury has been instructed is a matter lying within the discretion of the trial court and its admission will not be held erroneous or the action of the trial court reversed unless an abuse of discretion is shown or is manifest. *Bynum* v. *Brady,* 82 Ark. 603, 100 S.W. 66; *Nutt* v. *Fry,* supra. We have also held that it was not error for the court to permit witnesses to restate their testimony on a certain matter to a jury in the presence and at the direction of the trial court after the jury had retired to consider their verdict, when the jury returned into court and stated its desire that this be done. *Bennefield* v. *State,* 62 Ark. 365, 35 S.W. 790 (overruled on another point in *Tallman* v. *State,* 151 Ark. 108, 235 S.W. 389).

We have held that a chancellor did not abuse his discretion in allowing the reopening of a case before the entry of a final decree for the introduction of evidence on a point on which there had been no evidence. *Kennedy* v. *Kennedy,* supra. Of course, there is, and should be, a great deal more flexibility in such matters in a court trial than there is in a jury trial, particularly in a court of equity. We have recognized the discretion of a chancellor to set aside the submission of a case to allow a party to introduce additional evidence. *Fromholz* v. *McGahey,* 120 Ark. 216, 179 S.W. 360. In considering the question in *State* v. *Midland Valley R. Co.,* 197 Ark. 243, 122 S.W. 2d 173, we emphasized the trial judge's discretion in such matters, saying:

"The judge is not to be restricted to the functions of a mere umpire or referee in a contest between opposing parties or counsel, but is charged by law and conscience with the fundamental duty of seeing that truth is established and justice done, under the statutes and rules of law designed to bring about such result, and his control of the situation should be manifest and complete at all times." 64 C.J. 66

"The trial judge must always have a very large discretion in controlling and managing the routine proceedings at the trial, and it is not necessary to specify the matters to which such discretion extends. *** But it must be a reasonable, a legal discretion, and whether it be so or not must depend upon the nature of the proceeding on which it is exercised, the way it is exercised and the special circumstances under which it is exercised. It can never be intended that a trial judge has purposely gone astray in dealing with matters within the category of discretionary proceedings, and unless it turns out that he has not merely misstepped, but has departed widely and injuriously, an appellate court will not re-examine. It will not do it when there is no better reason than its own opinion that the course actually taken was not as wise or sensible or orderly as another would have been." *Coca-Cola Bottling Company of Ark. v. Jordan,* 186 Ark. 1006, 54 S.W. 2d 403, 405.

We have not considered such matters when the trial court acts on its own motion, but there is precedent for such action in equity. In *Kirschbaum v. Kirschbaum,* 92 N.J. Eq. 7, 111 A. 697 (1920), the court said:

"The court often, of its own motion, gives leave to parties to take further testimony to satisfy the ends of justice."

In *Holcombe v. Trenton White City Co.,* 80 N.J. Eq. 122, 82 A. 618 (1912), one of the authorities cited in *Kirschbaum,* the court was unable to fix the amount of liability because there was no evidence before the court on the subject. That court said:

"However, this court has the power to continue a hearing and permit further proof to be taken and that power ought to be exercised where it does not appear that injustice will be done and where, on the contrary, justice seems to require it."

In *Bradford v. Eutaw Sav. Bank of Baltimore City,* 186 Md. 127, 46 A. 2d 284 (1946), in which a party's motion asking

leave to take additional testimony on a cross-bill had been filed and granted after the chancellor had indicated that it would be desirable that additional testimony be produced before action was taken on it, the trial court's procedure was sustained on appeal. The appellants contended that this evidence should have been taken at the first hearing and that the appellee had closed her case without calling the witnesses who gave the additional testimony, even though they were there in court. The Maryland court said:

> *** However, a chancellor has the power to allow defects in proof to be supplied at any time. *Bailey v. Bailey,* Md., 46 A. 2d 275. Such action is in his discretion and is not subject to review here (*Trustees of German Lutheran, etc. v. Heise,* 44 Md. 453) except where his action is arbitrary, and the rights of some of the parties are improperly affected. When, in the judgment of the chancellor, the ends of justice will be served, this Court has said that it is his plain duty to allow further proof to come in. *Worthington v. Hiss,* 70 Md. 172, 16 A. 534, 17 A. 1026. We find nothing arbitrary in the action of the chancellor herein in this respect.

In order for a writ of prohibition to be issued, the court to whom it would be directed must be attempting to exercise judicial power without authority of law. *Robinson v. Merritt,* 229 Ark. 204, 314 S.W. 2d 214; *State v. Nelson,* 246 Ark. 210, 438 S.W. 2d 33. The writ will be issued by this court to relieve one from the onerous burden of litigation when (and only when) the trial court is attempting to act wholly without jurisdiction or is threatening or about to act in excess of its jurisdiction. *Gainsburg v. Dodge,* 193 Ark. 473, 101 S.W. 2d 178; *Murphy v. Trimble,* 200 Ark. 1173, 143 S.W. 2d 534. It is not available to bar pending proceedings if the court has jurisdiction. *Schirmer v. Cockrill,* 223 Ark. 817, 269 S.W. 2d 300. Remedy by prohibition is discretionary and is applied cautiously. *Faver v. Golden,* 216 Ark. 792, 227 S.W. 2d 453. The writ will not issue unless the petitioner is clearly entitled to it and the trial court is clearly without jurisdiction, or has clearly acted without authority. *Karraz v. Taylor,* 259 Ark. 699, 535 S.W. 2d 840; *Skinner v. Mayfield,* 246 Ark. 741, 439 S.W. 2d 651. *Capital Transportation Co. v. Strait,* 213 Ark. 571,

211 S.W. 2d 889; *Shuman* v. *Irby*, 201 Ark. 907, 147 S.W. 2d 358; *Schley* v. *Dodge*, 206 Ark. 1151, 178 S.W. 2d 851; *Miller* v. *Connally*, 354 F. 2d 206 (5 Cir., 1965). Prohibition may not be used to control the trial court's discretion. *McKenzie* v. *Burris*, 255 Ark. 330, 500 S.W. 2d 357, 61 ALR 3d 250. See also, *State* v. *Dowd*, 448 S.W. 2d 1 (Mo., 1969); *Crackerneck Country Club, Inc.* v. *Sprinkle*, 485 S.W. 2d 652 (Mo. App., 1972); *Miller* v. *Connally*, supra; *State* v. *Circuit Court of Morgan County*, 241 Ind. 168, 170 N.E. 2d 443 (1960); *Seward* v. *Denver & R. G. R. Co.*, 17 N.M. 557, 131 Pac. 980 (1913).

We should not infer that the plaintiffs had failed to meet their burden of proof merely because the trial judge found that he could not remember testimony given some years earlier sufficiently to make a decision on a critical issue. If retrieval of the testimony was impractical, as the chancellor saw it, the matter of procedure in order to see that justice be done lay in his sound judicial discretion and the exercise of that discretion should not be disturbed by prohibition.

We spoke to the function of certiorari in *State* v. *Nelson*, supra. Under the authorities there cited, it would not be available because we cannot say, upon the face of the record, that the chancery court procedures taken are erroneous or illegal, without the jurisdiction of the court or in excess of its jurisdiction. Furthermore, we said in *Nelson* that certiorari is not available to control discretion or review the exercise of a court's discretionary authority. If we quashed the trial court's action on certiorari, we would, indeed, be controlling its discretion or reviewing the exercise of its discretionary authority.

We are perhaps not informed as to the reasons the testimony taken and reported may not be retrieved and cannot know whether, after this lapse of time, the chancellor could properly weigh the testimony of witnesses he saw and heard over four years earlier if it were retrieved. We cannot overturn a discretionary act of a trial court within the exercise of its jurisdiction simply because one or more members of this court might have attempted to address the problem by a different procedure. See *Crackerneck Country Club, Inc.* v. *Sprinkle*, supra; *Coca-Cola Bottling Co. of Ark.* v. *Jordan*, 186 Ark.

1006, 54 S.W. 2d 403.

The writ is denied.

We agree. HARRIS, C.J., and HOLT and HICKMAN, JJ.