# FARM BUREAU MUTUAL INSURANCE COMPANY
## of Arkansas, Inc. *v.* RUNNING M FARMS, INC.;
### S&K Company, Inc.; and Sumner Mitchell

01-251                                                                72 S.W.3d 502

Supreme Court of Arkansas
Opinion delivered April 25, 2002

*Wright, Chaney, Berry, Daniel, Hughes & Moore, P.A.*, by: *Rodney P. Moore*, for appellant.

*Crisp, Boyd & Poff, L.L.P.*, by: *Mark C. Burgess*, for appellees.

D ONALD L. CORBIN, Justice. Appellant Farm Bureau Mutual Insurance Company of Arkansas, Inc., appeals from the order of the Lafayette County Circuit Court denying its motion for judgment notwithstanding the verdict and motion to deny a new trial. Appellees Running M Farms, Inc., S&K Company, Inc., and Sumner Mitchell cross-appeal the trial court's order allowing Appellant to withdraw a confession of judgment filed prior to trial. This case was certified to us from the Arkansas Court of Appeals as involving an issue of first impression; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1). We dismiss both the appeal and cross-appeal.

This action stems from a dispute over liability under insurance policies for damage to crops caused by hail. Mitchell, a farmer, is president of Running M Farms and S&K Company, two farms located in Hempstead and Lafayette Counties. On March 18, 1997, Mitchell purchased crop-hail insurance from Appellant for wheat crops that he had planted on each farm. One policy covered 520 acres of the 590 acres of wheat planted on Running M Farms, and a second policy covered the entire 350 acres of wheat planted at S&K Company.

According to eyewitnesses, a storm moved through the area where the farms were located on the morning of April 22, 1997, producing heavy rains, high winds, and marble-sized hail. Mitchell testified that at the time of the storms he was at a nearby airstrip where he maintained a crop-dusting business. After the storm passed, Mitchell drove to his farms to determine if his crops had sustained any damage. Mitchell visited S&K Company first, where he discovered some wheat plants with split flag leaves, bruised stems, and a few broken-over plants. He then went to Running M Farms and again noticed some plants with split flag leaves and bruised stems. According to Mitchell, of the wheat planted at Running M Farms, all but a twenty-acre circular patch, was hit by hail.

Mitchell contacted William Tipton, a staff adjuster for Appellant, to report the damage to his wheat crops. After inspecting the crops, Tipton sent Mitchell a letter stating, "[t]here is no coverage under your crop hail policy for damage to the flag leaf of your wheat. If you see some direct damage in the future to the head or stalk, I will be happy to reinspect the wheat again with you." While harvesting the wheat on S&K Company, Mitchell noticed some damage to the stalks and heads. He contacted Tipton and requested a reinspection. Following this reinspection, Appellant offered Mitchell $6,900 in settlement of his claim.

After declining the offer, Appellees filed suit, alleging that Appellant had breached its contract resulting in damages of $70,000 to Running M Farms and $54,000 to S&K Company. Appellees filed several amended complaints during the course of this litigation, adding various claims for extra-contractual damages, fraud, bad faith, and tortious interference with a business expectancy. The case was originally scheduled to go to trial on August 23, 1999, but after Appellant filed a pleading entitled "Confession of Judgment," admitting liability under the insurance policy in the amount of $76,000, the matter was continued, and a new trial was scheduled for June, 2000.

Appellant subsequently filed a motion to withdraw its confession of judgment on the basis that the parties were in dispute regarding the effect of the confession and that it was not possible

to avoid a trial. The trial court granted Appellant's request, and the case proceeded to trial on June 22, 2000. At the close of Appellees' case, Appellant moved for a directed verdict, but the motion was denied. Appellant then rested without presenting any further evidence. The case was submitted to the jury, which was unable to agree on a verdict. The jury was then dismissed and a mistrial declared.

Following the mistrial, Appellant filed "A Motion For Judgment Notwithstanding The Verdict And Motion To Deny New Trial," alleging that Appellees failed to present sufficient proof to create a jury question on the breach of contract issue and also failed to offer proof as to the amount of damages incurred. The trial court denied Appellant's motion and this appeal followed.

On appeal, Appellant contends that the trial court erred in failing to grant its motion for judgment notwithstanding the verdict (JNOV) and motion to deny a new trial. Appellant argues that it was entitled to a directed verdict, because Appellees failed to submit sufficient proof in support of their claim for breach of contract and also failed to establish the amount of damages they were entitled to as a result of any breach. As an initial issue, however, this court must determine whether an appeal from an order denying a motion for JNOV is a final order for purposes of appeal.

▉▉▉ This court has held that although neither party raises the issue, the question of whether an order is final and subject to appeal is a jurisdictional question that this court will raise *sua sponte*. *Reed v. Arkansas State Hwy. Comm'n*, 341 Ark. 470, 17 S.W.3d 488 (2000); *Union Pac. R.R. Co. v. State Ex Rel. Faulkner Cty.*, 316 Ark. 609, 873 S.W.2d 805 (1994). It is not only the power but the duty of a court to determine whether it has subject-matter jurisdiction. *Haase v. Starnes*, 337 Ark. 193, 987 S.W.2d 704 (1999). The parties to an action may not confer subject-matter jurisdiction on this court. *Vanderpool v. Fidelity Cas. Ins. Co.*, 327 Ark. 407, 939 S.W.2d 280 (1997). Thus, even though the parties to this action do not challenge our jurisdiction, we are obligated to determine if the present order is final and appealable, thereby conferring jurisdiction on this court.

Rule 2(a)(1) of the Arkansas Rules of Appellate Procedure—Civil provides that an appeal may be taken only from a final judgment or decree entered by the trial court. The requirement of finality limits our appellate review to final orders in an effort to avoid piecemeal litigation. *Larscheid v. Arkansas Dep't. of Human Servs*, 343 Ark. 580, 36 S.W.3d 308 (2001). For an order to be final, it must dismiss the parties from the court, discharge them from the action, or conclude their rights to the subject matter in controversy. *Beverly Enters.-Ark., Inc. v. Hillier*, 341 Ark. 1, 14 S.W.3d 487 (2000); *Mueller v. Killam*, 295 Ark. 270, 748 S.W.2d 141 (1988). This court has held that the test of finality and appealability of an order is whether the order puts the court's directive into execution, ending the litigation or a separable branch of it. *Reed*, 341 Ark. 470, 17 S.W.3d 488. In the present action, Appellant admits that there is no Arkansas case providing for a direct appeal from an order denying a motion for JNOV. Appellant argues, however, that this is a final order, appealable pursuant to Ark. R. App. P.—Civ. 2(a)(3), because it is an appeal from the grant of a new trial. We disagree.

A review of Ark. R. Civ. P. 59, governing new trials, reveals that the new trial at issue here is not of the type provided for in that rule. Rule 59(a) sets forth eight specific grounds giving rise to the grant of a new trial. The requirement of a new trial following a mistrial is not one of those announced grounds. The rule further provides that "A motion for a new trial shall be filed not later than 10 days *after the entry of judgment*. A motion made *before entry of judgment* shall become effective and be treated as filed on the day *after the judgment is entered*." *See* Rule 59(b) (emphasis added). Thus, Rule 59 encompasses those situations where a new trial is requested following the entry of a judgment, not situations where a new trial is required following a mistrial.

A review of our case law establishes that this court has drawn a distinction between a new trial following the entry of judgment and one following a mistrial. Where a mistrial has occurred, it is equivalent to no trial having occurred at all, as there has been no final determination regarding a claimant's cause of action. *Gregory v. Colvin*, 235 Ark. 1007, 363 S.W.2d 539 (1963). Stated otherwise, a mistrial is a proceeding that has miscarried,

and the consequence is not a trial. *Midwest Lime Co. v. Independence Cty. Chancery Court*, 261 Ark. 695, 551 S.W.2d 537 (1977). A new trial, on the other hand, is defined by statute as a reexamination in the same court of an issue of fact *after a verdict by a jury or a decision by the court*. *Id*. Distinguishing a new trial from a retrial, this court stated:

> There is a marked difference between a court's granting a motion for a new trial and declaring a mistrial; the former contemplates that a case has been tried, a judgment rendered, and on motion therefor said judgment set aside and a new trial granted, while the latter results where, before a trial is completed and judgment rendered, the trial court concludes that there is some error or irregularity that prevents a proper judgment being rendered in which event a mistrial may be declared.

*Id*. at 702, 551 S.W.2d at 540 (citing 66 C.J.S. 65, § 1c, *New Trial*). In sum, the critical distinction between a retrial following a mistrial and a new trial is whether a judgment was entered.

Another important distinction is that where a mistrial has occurred due to a jury's inability to reach a verdict, a party may not be denied its right to a new trial. *See, e.g., Tipps v. Mullis*, 257 Ark. 622, 519 S.W.2d 67 (1975); *Gregory*, 235 Ark. 1007, 363 S.W.2d 539. In *Tipps*, this court held that once a jury is properly discharged because it is unable to agree on a verdict, a "new trial on all issues and subject to the same motions and procedures as if no trial had ever been had" is required. 257 Ark. at 625, 519 S.W.2d at 69. There is no similar requirement for a new trial once a judgment has been entered. In fact, a motion for a new trial filed pursuant to Rule 59 is a matter left to the discretion of the trial court. *See, e.g., Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001); *Montgomery Ward & Co. v. Anderson*, 334 Ark. 561, 976 S.W.2d 382 (1998).

Clearly, in view of this court's case law on this point, it is evident that once the jury deadlocked and was subsequently discharged here, the resulting mistrial caused a situation where the present action would proceed to a new trial on all issues and subject to the same motions as before, because there has been no determination of the merits in this case. This is not a case where the trial court could grant or deny a new trial at its discretion.

Moreover, Appellant, prior to the time the jury deadlocked, had no right to appeal from the trial court's denial of its directed-verdict motion, where no final judgment had been rendered. Appellant does not now have the right to a review of that denial, simply because a verdict was not entered. In sum, the instant order is not one granting a new trial and, thus, is not appealable under Ark. R. App. P.—Civ. 2(a)(3).

We are mindful that Ark. R. Civ. P. 50, governing directed verdicts and motions for JNOV, contemplates the filing of a JNOV motion where no verdict has been returned. In discussing the time allowed to file a motion for JNOV, Rule 50(b)(2) states in relevant part: "[i]f a verdict was not returned, such party within 10 days after the jury has been discharged may move for judgment in accordance with his motion for directed verdict." Rule 50(b)(3) further provides in relevant part: "If no verdict was returned, the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial." Nowhere in this rule, nor in any rule of appellate procedure, is a party permitted to appeal the denial of a motion for JNOV where there has been no final determination of the merits. If, however, this were a situation where the trial court had granted Appellant's motion for JNOV, thereby depriving Appellees of a new trial, then such an order would be appealable, because the effect of the trial court's order would be to dismiss the cause of action and discharge the parties. Such an order would be analogous to an order denying summary judgment when it is combined with a dismissal on the merits, thereby terminating the proceedings below. *See e.g.*, Ark. R. App. P.—Civ. 2(a)(2); *Gammill v. Provident Life & Accident Ins. Co.*, 346 Ark. 161, 55 S.W.3d 763 (2001); *Robinson v. Beaumont*, 291 Ark. 477, 725 S.W.2d 839 (1987).

Finally, we are unpersuaded by Appellant's contention that this court should review the denial of a motion for JNOV because other jurisdictions do so. Specifically, Appellant points to Nebraska, where the courts have reviewed a trial court's denial of a motion for directed verdict or JNOV following a mistrial. *See Synder v. Contemporary Obstetrics & Gynecology, P.C.*, 258 Neb. 643, 605 N.W.2d 782 (2000); *Bailey v. Williams*, 189 Neb. 484, 203 N.W.2d 454 (1973). These cases are distinguishable, how-

ever, because Nebraska statutory law specifically provides that such orders are appealable. Arkansas does not have a similar statutory provision excluding orders denying motions for directed verdict or JNOV from the finality requirement.

Moreover, we agree with the reasoning announced by the North Carolina Court of Appeals in *Samia v. Ballard*, 25 N.C. App. 601, 214 S.E.2d 222 (1975), that the provision of a procedural rule allowing for the filing of a motion for JNOV where no judgment has been entered does not have the effect of broadening the scope of appellate jurisdiction. There, the court held that the denial of a defendant's motion for directed verdict following a mistrial was not an appealable order, because there was no judgment from which to appeal.

Similarly, the Supreme Court of Maine held that where a mistrial was declared due to a hung jury, the case had not reached its final judgment stage, as no judgment had been rendered, and thus the denial of a motion for directed verdict was not appealable. *Bernat v. Handy Boat Service, Inc.*, 239 A.2d 651 (1968). "Historically it has been recognized that the granting of a mistrial automatically produced a new trial and the case was not ripe for appellate review at that stage." *Id.* at 652.

Finally, in *Gold v. Newman*, 211 Conn. 631, 560 A.2d 960 (1989), the Connecticut Supreme Court held that the denial of a defendant's motion for directed verdict did not constitute a final judgment for purposes of appeal. In so holding, the court pointed out that there was no statutory authority excepting such motions from the general requirement that an appeal must be from a final order. The court reasoned that the denial of a motion for JNOV following a mistrial "does not terminate a separate and distinct proceeding or so conclude the rights of the parties that further proceedings cannot effect them." *Id.* at 635, 560 A.2d at 962. The Connecticut court further stated that allowing such appeals could create the opportunity for an interlocutory appeal in every case where a mistrial is declared, thereby delaying such cases for considerable periods of time. *Id.*

In sum, we agree with those jurisdictions that have held that the denial of a motion for directed verdict or JNOV is

not a final appealable order. Thus, we are precluded from reaching the merits of Appellant's argument on appeal. Likewise, we are precluded from reaching the merits of Appellees' cross-appeal.

Appeal dismissed; cross-appeal dismissed.