LENA KIRSCHBAUM, petitioner,

*v.*

ABRAHAM KIRSCHBAUM, defendant.

[Decided October 13th, 1920.]

1. An exception to the finding of a master is in the nature of an appeal to the court.

2. An application for a rehearing in equity is the equivalent of an application for a new trial at law.

3. An application for a rehearing in chancery is governed by principles applicable to motions for new trials after verdict in cases at law; and in order to justify a rehearing in an equity case for newly-discovered evidence, the new matter must be of such character that if it had been heard on the trial it would probably have changed the result and produced an opposite result, and it must be shown that the testimony sought to be introduced is newly-discovered evidence not accessible to the petitioner, by the exercise of due diligence, at the time of hearing.

4. Application for rehearing in chancery after decree is made by bill of review; after hearing and before decree it should be made by petition supported by affidavit.

5. The court of its own motion and in the interest of justice will sometimes permit the taking of further testimony to legally establish what has been but insufficiently proved; but where the defeated party applies for leave to take further testimony he must show that he is entitled to the relief he seeks.

6. Want of power for copulation is impotence; mere sterility is not.

7. There is no time limit judicially ascertained within which a suit for nullity for impotence may be successfully brought and after which it must be defeated on the ground of acquiescence in the situation; and, in the nature of things, there can be no arbitrary rule on this subject; each case must depend on its own facts and circumstances.

8. *Semble:* That if one institutes a suit for divorce, not from a desire for the redress sought, but to attain some collateral end, the law characterizes his conduct as insincerity and withholds the decree prayed, however much the defendant may be in the wrong.

9. *Semble:* The doctrine of insincerity in divorce suits is apparently an anomaly in the law, at least it is *sui generis;* for it is a general principle that when a suitor is entitled to relief in respect to the matters concerning which he sues, his motives are immaterial.

10. On the facts in the instant case, the husband's impotence being presumed—*Held,* that the wife, having lived with her impotent husband for upwards of eleven years without making any explanation, must be regarded as having accepted the situation and cannot be heard to complain; in other words, that she has by conduct ratified the marriage.

----

On application for leave to take further testimony in the nature of an application for rehearing after an adverse special master's report in an *ex parte* case for nullity of marriage.

*Mr. Jerome J. Dunn,* for the petitioner.

WALKER, CHANCELLOR.

Lena Kirschbaum filed a petition against Abraham Kirschbaum alleging that on October 15th, 1908, a form or ceremony of marriage took place between them at Newark, in this state, and that at the time of the marriage the defendant was physically and incurably impotent to consummate the same by reason of a malformation of his parts of generation or some other physical cause, the exact nature of which was then unknown to the petitioner; that she was ignorant of defendant's impotence at

the time of her marriage to him and had not subsequently ratified the marriage. After alleging residential status, she prays that the pretended marriage be declared to be null and void for the cause mentioned, in pursuance of the statute, and for other and further relief. The defendant was served with process of a citation and a certified copy of the petition but did not answer. The matter was referred to a special master in due course, and the petitioner was directed to take depositions and other evidence and bring on the hearing of the cause *ex parte.* Depositions were taken before the master, who has reported that the ceremony of marriage took place as stated in the petition, and that the petitioner has the residential qualification which would entitle her to the relief she prays. He further reports that it is proven to his satisfaction that in the month of January, 1920, at which time the defendant was examined by a physician, who was one of the witnesses, he was sterile and incurably impotent; that the petitioner testified that at the time she married the defendant he was unable to perform the act of copulation, since which time and up to the time they separated in February, 1920, he had not been able to perform the act. The witness, Dr. Parsonnet, testified that in the medical profession a man in his condition is considered and called impotent; that he could not say that Kirschbaum was not able to have sexual intercourse; he could only say that he was absolutely sterile and not capable of propagation, and in the medical profession that is impotence.

The solicitor of the petitioner insisted before the master that the testimony that impotence existed at the time of the marriage is corroborated by the testimony of the physician that the defendant was incurably impotent in January of this year, but the master reported that he was unable to agree with that contention, and that, therefore, in his opinion, the petitioner had not substantiated the truth of the allegation of her petition with reference to the cause for nullity and was not entitled to the relief prayed, and, therefore, he recommended that the petition be dismissed.

No exception has been filed to the master's report. Had there been, the hearing before me would have been in the nature of an appeal from the master to the court. *McCauley* v. *McCauley,*

*88 N. J. Eq. 392* (bottom of *p. 395*). Instead, the petitioner has applied for leave to take further testimony, and this in an informal written communication from her solicitor to the chancellor, the pertinent part of which reads as follows:

"At the time of the hearing before the special master the petitioner undertook to show that the impotency alleged existed at the time of the marriage, but at that time was unable to produce a physician who made an examination of the defendant, Abraham Kirschbaum, as long ago as the date of the marriage. Since the time of the filing of the report my client has successfully located that physician and he is now willing to testify to the condition of Kirschbaum at the time of the marriage, and in fact there are a few more points which not only this physician will be able to clear up but which the petitioner herself will be able to do also."

If there had been a final decree dismissing the petition the application would have had to be by bill of review. *Watkinson* v. *Watkinson, 68 N. J. Eq. 632* (bottom of *p. 633*). And the application would have had to be made by petition supported by affidavit that the evidence was not only new but could not have been discovered by reasonable diligence before the hearing, and the court would have to be satisfied that the new matter came to the knowledge of the applicant for the first time since the period at which it could have been made use of in the suit, and that it could not with reasonable diligence have been discovered sooner, and that it is of such a character that if brought forward in the suit it would have altered the judgment. *Ibid. 634.*

An application for a rehearing in chancery is governed by principles applicable to motions for new trials after verdict at law. *Feinberg* v. *Feinberg, 70 N. J. Eq. 420,* and *Richardson* v. *Hatch, 68 N. J. Eq. 788.* And at law they are always addressed to the discretion of the court and are not reviewable on error. *Furman* v. *Applegate, 23 N. J. Law 28, 33; Delaware, Lackawanna and Western Railroad Co.* v. *Nevelle, 51 N. J. Law 333; State Mutual Building and Loan Association* v. *Williams, 78 N. J. Law 720, 723; De Mateo* v. *Perano, 80 N. J. Law 437, 438.* Upon rule to show cause why a verdict should not be set aside on the ground of newly-discovered evidence, that evidence must be

of such a character that it would probably change the result and produce the opposite result. *Hoban* v. *Sandford & Skillman Co., 64 N. J. Law 426.* And a constitutional court is protected in its exclusive jurisdiction of such questions by the constitution. *Flanigan* v. *Guggenheim Smelting Co., 63 N. J. Law 647; In re Thompson, 85 N. J. Eq. 221.* While newly-discovered evidence which is merely cumulative is not ground for a new trial (*Thomas* v. *Consolidated Traction Co., 62 N. J. Law 36; Hoban* v. *Sandford & Skillman Co., supra*), the testimony now offered is of a kind sufficiently different from that adduced at the hearing before the master as not to be open to the objection that it is cumulative (*Mulock* v. *Mulock, 28 N. J. Eq. 15*), as Dr. Parsonnet testified he could not say that the man was incapable of having sexual intercourse, only that he was sterile, which he denominated impotence, and it is now asserted that a physician has been found who will testify to the defendant's condition at the time of the marriage—presumably, that he was then incapable. This presumption is indulged only for the purpose of deciding the present application on its merits. While applications for new trials are not appealable at law, they appear to be in equity. *McDowell* v. *Perrine, 36 N. J. Eq. 632; Richardson* v. *Hatch, 68 N. J. Eq. 788, 793.*

I could have dismissed this application off-hand, as it is not made by petition supported by affidavit, but I have concluded to treat it as being regular in form so far as the offer is substantive. I will go further and assume that the physician now offered to be produced will not only "testify to the condition of Kirschbaum at the time of the marriage," but that he would testify that he was in fact impotent at that time. Of course, I can conclude nothing as to a "few more points" which not only the physician but the petitioner "will be able to clear up," as there is here no disclosure of any pertinent testimony after discovered or otherwise. However, such testimony as is offered to be produced, while not cumulative, is not after discovered within the meaning of the law.

Now, it is distinctly alleged in the petition in this case that at the time of the marriage ceremony the defendant was physically and incurably impotent. The petitioner, therefore, knew from first to last that that allegation would have to be proved.

She offered testimony falling short of proving that fact, and now that she is defeated in her application, requests the court to open the case and permit the offer of testimony which, in the nature of things, must have been as available to her by the exercise of due diligence at and before the time of the hearing as it is now after an adverse report.

The court often, of its own motion, gives leave to parties to take further testimony to satisfy the ends of justice. *Holcomb* v. *Trenton White City Co., 80 N. J. Eq. 122* (at *p. 162*) ; *Whitehead* v. *Hamilton Rubber Co., 53 N. J. Eq. 454.* Obviously, it is one thing for the court of its own motion, and in the interest of justice, to permit the taking of further testimony to legally establish what has already been but insufficiently proved, and quite another thing to grant the request of a defeated party for leave to take further testimony in order to make a case, where the proofs submitted on final hearing have not established the issue tendered by the party. As I said, in *Rinehart* v. *Rinehart, 110 Atl. Rep. 29,* as the law favors marriage and disfavors divorce, the court will do nothing to facilitate the latter, but will only dissolve the marriage relation where the complaining party is strictly entitled to a decree. And this, of course, applies to nullity suits. Surely suitors should not be permitted in this class of cases to experiment with the court—that is, to submit as meagre proofs as they think will establish their cases under the law, and failing, be permitted, as matter of grace, to try their cases over again. As was said by Vice-Chancellor Grey in *Richardson* v. *Hatch, supra* (*68 N. J. Eq.,* at *p. 788*), the cause cannot be tried over again because the defeated party would like to have another chance.

There is a practice in *ex parte* cases to permit of the taking of further testimony in numerous instances, but the present case does not fall within the rule. When a favorable report is made and the court in reviewing the case concludes that the testimony upon which the master based his finding does not justify it, leave to take further testimony is frequently given. Upon the conclusion of the testimony in the master's office that functionary may with propriety advise the petitioner that he has made a case, or that the master is not satisfied with the evidence on such and

such a point, and adjournments are frequently had to permit the petitioner to adduce evidence which will satisfy the master on the point involved. When, however, the master reports that he is satisfied that the allegations of the petition have been proved, and that the petitioner is entitled to a decree, the party may reasonably rely upon having produced sufficient evidence. And when the court, in reviewing that evidence, disagrees with the master, it is but fair, at least in a great many instances, to permit of the taking of further testimony. But where the master's report is adverse and recommends that the relief prayed for be denied, petitioner is obliged to file an exception within thirty days or suffer the case to be dismissed. *Rule 265.* Instead of filing exceptions, petitioner may, of course, apply for a rehearing, as was done in this case, the application before me being rested in part on the assertion of newly-discovered evidence. As Dr. Parsonnet's testimony that the defendant was impotent because sterile does not prove impotence as that condition is defined and known in the law, therefore, the testimony now offered, which it is assumed would tend to prove want of power, is not cumulative.

In *2 Bish. M., D. & S.* § *762,* it is laid down that when from any cause irremediable inability to have copulation exists, there is a complete failure of one of the ends of matrimony, and so the marriage is frustrate. And in section 768, that in common law countries the marriage will be good if there is adequate power of mere copular, though impregnation should be impossible, and that, as Dr. Lushington held, mere incapability of connection is not sufficient ground whereon to found a decree of nullity, and alone was so clearly insufficient that it would be a waste of time to discuss an admitted point. And in section 782, that the books of medical jurisprudence classify impotence variously, according to the differing tastes of their authors; but the classifications were not generally on true legal distinctions and therefore of very little importance to the lawyer. This is illustrated in the case *sub judice,* for the doctor testified that Kirschbaum is impotent because he is sterile, while the law is that want of power of copula alone, and not mere sterility, is impotence.

As the matter is not before me on an exception, I am not now to pass upon the master's finding, but will state a view which, in my opinion, shows that the proffered new testimony would not change the result reached.

The parties to this suit were married on October 15th, 1908, and, as the petitioner testified, they lived together until February, 1920, a period of eleven years and four months. She does not say why she left him. She does say that her physician advised her that it would not be good for her to stay with him, that it was dangerous. From this it may be presumed that she left him on that account—that is, on account of some condition, nervous or otherwise, which was brought about by their unnatural relations—that of cohabitation without copulation; but if this be so that condition must have existed during all the time they lived togther, and must have been much more acute at first than at last. And the question arises, Has not the petitioner's long cohabitation with her husband, in the circumstances, amounted to a ratification of this marriage, which is, or rather was, voidable and not void?

In the Divorce act, which was in force at the time of the marriage of these parties, and which still obtains, it is provided (*P. L. 1907 p. 475*) that decrees of nullity may be rendered when

"The parties, or either of them, was at the time of marriage physically and incurably impotent; *provided,* the party making the application was ignorant of such impotency or incapability at the time of the marriage, or has not subsequently ratified the marriage."

In *G.* v. *G., 67 N. J. Eq. 30*, it was held by Vice-Chancellor Pitney that marriage contracted by parties, one of whom was impotent, is not void but voidable merely at the instance of the disappointed party, and may be ratified by such party. The suit (*G.* v. *G.*) was brought under the Divorce act of 1902 (*P. L. 1902 p. 502*), wherein a decree of divorce instead of nullity was provided in case the parties, or either of them, at the time of the marriage, was physically and incurably impotent and the marriage had not been subsequently ratified. So, we have sharply present in the case *sub judice* the question of ratifica-

tion. Vice-Chancellor Pitney, in *G.* v. *G.,* said that this subject is elaborately discussed and carefully considered in several English cases, citing them, and held that the wife in the case before him, who had lived with her husband for twenty years, and then separated from him, accepting a competent support instead of suing for nullity, had by her conduct distinctly affirmed the marriage relation. In the first case cited by him, in *G.* v. *G.,* he says that the wife's suit was defeated because she had ratified the marriage contract by long acquiescence and support from her husband, the precise length of time not being stated. In another case, where the parties had lived together for upwards of seven years, the wife's suit was defeated because she had not shown two requisites—sincerity and promptness.

There is no time limit judicially ascertained before which a suit for nullity for impotence may be successfully brought and after which it must be defeated on the ground of acquiescence in the situation, and, in the nature of things, there can be no arbitrary rule on this subject—each case must depend upon its own facts and circumstances. In *G.* v. *M., 10 App. Cas. 171,* it was held that delay in raising a suit for nullity on the ground of impotency is a material element in the investigation of a case which upon the facts is doubtful; but there is no definite or absolute bar arising from it; and Lord-Chancellor Selborne observed (at *p. 189*) that any definite or absolute bar arising from a certain amount of time cannot be established by authorities. And Mr. Bishop says, in *2 Bish. M., D. & S. § 420,* that a great delay must in some way be accounted for or it will bar the suit, because in the absence of explanation the court will not meddle with what the party complaining shows by conduct through a considerable series of years to be no grievance. It is to be observed that the wife in the instant case makes no explanation whatever as to her reason for living with this man upwards of eleven years, and, at this late day, endeavoring to annul a voidable marriage. In *Peipho* v. *Peipho, 88 Ill. 438,* where complainant sought a divorce thirteen years after the marriage on the ground that the defendant was a hermaphrodite, and therefore impotent, and for nearly eight years had cohabited with defendant with full knowledge and without complaint as to impotency, it was held

that in the absence of strong rebutting facts he must be taken to have accepted the situation and could not be heard to complain.

In the unreported case of *Butler* v. *Butler* (*docket 29 p. 746, April 10th, 1909*), when vice-chancellor, I held that a husband who sought to excuse his delay in bringing suit for nullity because of the wife's physical and incurable impotence at the time of marriage, for approximately nine years, by asserting that his salary was too small until the time of the suit, and that he had been saving up to enable himself to bring the proceedings, could have accumulated enough to employ counsel in less than half the time, and that it seemed to me that the case showed a ratification by the complainant, and also lack of sincerity on his part in bringing suit; that his attempt was doubtless to rid himself of further payment of an allowance under articles of separation between the parties, or to enable him to contract another marriage, or for some other purpose. This leads me to make an observation on the question of want of sincerity, which is adverted to in one of the English cases cited by Vice-Chancellor Pitney, as appears above, although it has no application in the instant case. It is stated in *2 Bish. M., D. & S.* § *433*, that if one institutes a divorce suit, not from a desire for the redress which he asks, or acting under the weight of the grievance which he alleges, but to attain some collateral end, the law characterizes his conduct as insincerity and withholds from him the decree which he prays, however much the defendant may be in the wrong. There is nothing in the case before me to indicate lack of sincerity, for it does not appear that the wife has any ulterior motive. This doctrine of insincerity is apparently an anomaly in the law, at least, it is *sui generis;* for it is a general principle that when a suitor is entitled to relief in respect to the matters concerning which he sues, his motives are immaterial. *Bull* v. *International Power Co., 84 N. J. Eq. 6, 10.*

Now, I have no hesitation in pronouncing in this case that where, as here, the wife has accepted and enjoyed the benefits, such as they may be, of a merely platonic marriage for upwards of eleven years, she cannot be permitted to repudiate the contract, but must be held to have ratified it by conduct which she in nowise explains. And this is dispositive of the case against

the petitioner quite irrespective of the evidence offered as newly discovered, and which, therefore, if received, would not change the result.

The views above expressed lead to a denial of the rehearing sought. The time within which an exception to the master's report might be filed under the rule having elapsed, the petitioner will still, if she desires, be given leave to except and have a hearing on the case as submitted to the master. My holding that the petitioner has ratified the marriage would defeat her on exception as well as on application for rehearing, but, with exception overruled, she would be able to raise both questions, viz., sufficiency of proofs before the master and right to rehearing on appeal if she went to the court of last resort.