13 N.J. Super. 454 (1951)
80 A.2d 633
ALVINO DONATI, PLAINTIFF-APPELLANT,
v.
EVA DOROTHY CHURCH, ETC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 12, 1951.
Decided May 14, 1951.
*456 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Paul Colvin argued the cause for the appellant.
The opinion of the court was delivered by BIGELOW, J.A.D.
The appellant husband instituted the action to annul his marriage with respondent on the ground of her impotence. The advisory master to whom the case was referred in the Chancery Division, after hearing the proofs, dismissed the complaint.
Our statute, R.S. 2:50-1(c), authorizes a decree of annulment where
"The parties, or either of them, were at the time of marriage physically and incurably impotent, provided the party making the application shall have been ignorant of such impotency or incapability at the time of the marriage, or has not subsequently ratified the marriage."
Impotence is not sterility or inability to beget or bear a child. It is inability to have sexual intercourse. Kirschbaum v. Kirschbaum, 92 N.J. Eq. 7 (Ch. 1920); Turney v. Avery, 92 N.J. Eq. 473 (Ch. 1921); Heller v. Heller, 116 N.J. Eq. 543 (E. & A. 1934). We are satisfied that respondent is and was at the time of the marriage, incurably impotent. The introitus or opening of the vagina is infantile in type and too small to allow of copulation, although her husband was able to, and did frequently, insert the tip of his penis. This imperfect intercourse is not enough to rebut a finding of the defendant's impotence. 17 Am. Jur. 223, Divorce § 141. D. v. A., 1 Rob. Ecc. 280, 298; 163 Eng. R. 1039 (Consistory, 1845).
The subject of ratification was carefully considered in G. v. G., 67 N.J. Eq. 30 (Ch. 1904) and Kirschbaum v. *457 Kirschbaum, supra. In both cases, the criteria developed by the English courts, unaided by statute, were used. What will bar relief in a case of this sort was suggested by the Lord Chancellor in G. v. M., 10 App. Cas. 171, at 186 (H. of L. 1885): "Conduct on the part of the person seeking this remedy which ought to estop that person from having it; as, for instance, any act from which the inference ought to be drawn that during the antecedent time the party has, with a knowledge of the facts and of the law, approbated the marriage which he or she afterwards seeks to get rid of, or has taken advantages and derived benefits from the matrimonial relation which it would be unfair and inequitable to permit him or her, after having received them, to treat as if no such relation had ever existed." And he gave as illustrations, "taking pecuniary benefits for example, living for a long time together in the same house or family with the status and character of husband and wife, after knowledge of everything which it is material to know." In the same case (p. 197), Lord Watson expressed the rule in these terms, "that in a suit for nullity of marriage there may be facts and circumstances proved that so plainly imply, on the part of the complaining spouse, a recognition of the existence and validity of the marriage, as to render it most inequitable and contrary to public policy that he or she should be permitted to go on to challenge it with effect."
The parties now before us were married in July, 1947. Plaintiff instituted his suit May 31, 1949, while he was still living with his wife, and he continued to live in the same small apartment with her until August or September. He testified, and his wife denied, that right after instituting the action, he ceased occupying the same bed with her, and instead slept on a couch. The last day of the year 1949, plaintiff returned to his wife's apartment and continued to live there one week, according to his own testimony, or until February 6, 1950, according to his wife. He returned to her because he thought they could "make a go of it," although "I knew I would never get the thing I wanted." But after a few days or weeks, he *458 consulted his lawyer, who told him, "You're making a big mistake." So he left his wife for the second time, but still continued to visit her occasionally. While living with defendant in the early days of 1950 and whenever he called on her later, they had sexual intercourse of the kind and to the extent that her condition permitted. The advisory master who heard the case, found that this occurred as late as two weeks before the final hearing.
The conduct of the plaintiff toward the defendant can be defended only by reason of the marriage relation between them, and clearly constituted a ratification of the marriage. The judgment dismissing the petition must therefore be affirmed.