Zuhair Elias JWAIDEH, Appellant,

v.

Patricia Jane JWAIDEH, Appellee.

No. 2116.

Municipal Court of Appeals for the
District of Columbia.

Argued Jan. 6, 1958.

Decided March 31, 1958.

**304**

Edwin Collier, Silver Spring, Md., for appellant.

Armand I. Robinson, Washington, D. C., entered an appearance for appellee, but filed no brief.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant brought this action seeking an annulment of his marriage on the ground that his wife was incapable of entering into the married state due to "psychogenic causes." The wife filed a noncommittal answer but did not appear at trial. At the conclusion of appellant's evidence, the trial judge held, among other things, that the suit was barred by laches and dismissed the complaint. This appeal followed.

The parties were married on December 20, 1948, in Syracuse, New York. In August 1949 they took up residence here and appellant's complaint was filed June 19, 1957, approximately eight and one-half years after the marriage was celebrated. The evidence disclosed that the parties had lived together during the entire period of the marriage without copulation; that both parties were physically capable, and that the deficiency was on the part of the wife.

There was evidence that the wife had a "phobic fear" of sexual intercourse which caused her to resist strenuously any consummation of the marriage. In 1949 her mother persuaded her to submit to an examination and treatment but the experience apparently served only to heighten her fears. As a consequence, she refused to seek any more help until March 1956 when she consulted a psychiatrist. He treated her for a period of thirteen months without success. He testified:

"When I first saw Mrs. Jwaideh I was quite skeptical. * * * [A]fter a few weeks, it was fairly clear to me that she was telling me the truth, that she was a very fearful individual, very anxious, who had many phobic reactions from childhood, and that in spite of the fact that she liked her husband it was impossible for her to consummate the marriage."

He also stated that in his opinion it was "very doubtful" that her condition could ever be cured.

Despite this failure to consummate the marriage, the parties continued to live together and share the same bed throughout the entire period right up to the week of trial. Appellant's explanation for his long delay in seeking an annulment was as follows:

"Well, sir, first of all, when I married my wife I loved her, and I still love her, and I did everything possible in my power to solve the problem that she is troubled with. * * *

"Another factor, when I came to Washington I was working, and in the meantime I was studying law until 1956, when I got my Doctorate in Laws. * * *

"All these factors combined together made me always go through my conscience and evaluate the factors, and before reaching any conclusion I wanted to satisfy myself and satisfy my conscience that I have given my wife the proper time in order that she would have been able to consummate her marriage."

Since the marriage was performed in New York, the question of its validity is governed by the substantive law

of that state.[1] New York's Domestic Relations Law, McKinney's Consol.Laws, c. 14, § 7, provides in part that:

> "A marriage is void from the time its nullity is declared by a court of competent jurisdiction if either party thereto:
>
> \* \* \* \* \* \*
>
> "3. Is incapable of entering into the married state from physical cause; \* \* \*."[2]

As used here, incapacity is not limited to a structural defect; "excessive sensibility, rendering sexual intercourse practically impossible on account of the pain it must inflict, may be sufficient."[3] The incapacity must be permanent and incurable. This is also the rule here.[4]

▮ The trial judge held that "\* \* \* The evidence in the instant case simply shows a stubborn disposition on the part of the wife to deny the husband matrimonial intercourse. \* \* \*" We think, however, that such a conclusion is wholly inconsistent with the uncontradicted and corroborated evidence, and since the judge did not indicate that he in any way disbelieved the witnesses, the finding is baseless and cannot stand.[5] We take it, then, that appellant has established adequate grounds entitling him to an annulment under the rule in the Vanden Berg case unless his suit is barred by laches.

▮ Generally, questions of limitations and laches are governed by the law of the forum,[6] unless, a statute of the state in which the cause of action arose destroys not only the right of action but also the cause itself.[7] New York's Civil Practice Act, § 1141, provides:

> "An action to annul a marriage on the ground that one of the parties was physically incapable of entering into the marriage state may be maintained by the injured party against the party whose incapacity is alleged; or such an action may be maintained by the party who was incapable against the other party, provided the incapable party was unaware of the incapacity at the time of the marriage, or if aware of such incapacity, did not know it was incurable. Such an action can be maintained only where an incapacity continues and is incurable; and must be commenced before five years have expired since the marriage."

It has been held, however, that a suit is not foreclosed by Section 1141, unless it is affirmatively pleaded, and thus that it affects only the remedy and not the right of action.[8] Consequently, our rules rather than this statute are applicable in the instant case.

▮ Generally, suits to annul marriages on the ground of incapacity must be brought within a reasonable time after discovery of the defect, and if the action is not instituted promptly, it will be barred by laches. Laches has two elements, (1) unreasonable delay, and (2) resulting prejudice.[9]

▮ We think that the judge was correct in dismissing the complaint on the ground of laches. Appellant's explanation for his long delay is wholly inadequate. It

---

1. Osborne v. Osborne, D.C.Mun.App.1957, 134 A.2d 438, 439.

2. We have a similar statute. Code 1951, § 16–403.

3. Vanden Berg v. Vanden Berg, Sup.Ct. 1923, 197 N.Y.S. 641, 642.

4. Kaufman v. Kaufman, 1947, 82 U.S.App. D.C. 397, 164 F.2d 519, which cites with approval the Vanden Berg case.

5. Scott v. Scott, D.C.Mun.App.1958, 137 A.2d 722, 725.

6. 11 Am.Jur., Conflict of Laws, § 191.

7. Id., § 193.

8. Katz v. Katz, Sup.Ct.1930, 136 Misc. 377, 240 N.Y.S. 68.

9. Cf. Duncan v. Summerfield, D.C.Cir., 251 F.2d 896.

is quite apparent that the incapacity was discovered within a year following the marriage, but after the initial treatment the parties did nothing more to correct the trouble until some six years later. The fact that appellant was working is hardly an excuse. In addition, we believe that if this marriage were dissolved at this late date prejudice must result. Appellant has received some advantages and benefits from the matrimonial relation. For at least seven and one-half years the parties have enjoyed the status and character of husband and wife after knowing of the incapacity. Indeed, they continued to share the same bed right up to the week of trial. Under these circumstances, we cannot say that the trial judge was in error in ruling that the suit was barred by laches.[10]

Affirmed.

10. Donati v. Church, 1951, 13 N.J.Super. 454, 80 A.2d 633, 634.