164 So.2d 661 (1964)
Andrew J. LAMBERT, Jr., Plaintiff-Appellee,
v.
Sandra LAMBERT et al., Defendants-Appellants.
No. 1162.
Court of Appeal of Louisiana, Third Circuit.
May 28, 1964.
Rehearing Denied June 17, 1964.
*662 Hall & Coltharp, by W. E. Hall, Jr., De-Ridder, for defendants-appellants.
Wm. C. Pegues, III, DeRidder, for plaintiff-appellee.
Before TATE, SAVOY, and HOOD, JJ.
TATE, Judge.
This is an action by a husband to disavow the paternity of a child born during the marriage. It was timely brought within one month of the child's birth. LSA-C.C. Article 191. The defendant wife-mother was served, but she did not answer or make any other appearance because of financial inability to travel to the trial place (although her deposition was taken and is in evidence).
The trial court decreed that the plaintiff husband was not the father of the child. An appeal is taken on the infant's behalf by the attorney appointed to serve as curator to represent him.

I.
Under Article 184 of the LSA-Civil Code, the husband is presumed to be the father of all children conceived during the marriage. This is one of the strongest presumptions known in law, Feazel v. Feazel, 222 La. 113, 62 So.2d 119, 120, and "This presumption is conclusive, except in certain limited cases", Williams v. Williams, 230 La. 1, 87 So.2d 707, 709. For instance, the husband cannot disown the child by alleging his natural impotence; or even for cause of adultery, unless the child's birth has been concealed from him. LSA-C.C. Art. 185.
One of the limited exceptions is that the presumption of legitimacy is at an end when the husband has been so remote from the wife at the time of the child's conception that cohabitation has been physically impossible. LSA-C.C. Art. 189.
The plaintiff-husband relies upon such codal provision in seeking to disavow paternity in the present proceedings. The appellant contends, to the contrary, that such ground of disavowal is not available when the spouses have cohabited, as here, between 180 and 300 days prior to the birth of the child sought to be disavowed.

II.
The plaintiff-husband and the defendant wife were married in 1952. They voluntarily separated for a period of five months between September 30, 1958 and March 4, *663 1959, when the wife went to live with relatives in California, while the husband remained at the family home in DeRidder, Louisiana, some 2000 miles distant. During this period, according to the testimony of both spouses, the husband and the wife did not see one another, nor did the wife leave California or the husband Louisiana.
On March 4, 1959, the couple reconciled, and they lived and cohabited together as man and wife in DeRidder from that time until May 15th. Both testified that they enjoyed normal sexual relations during this interval. On May 15th, however, the husband, having become suspicious that the child expected was not his, moved his wife to a nearby apartment until after the child was born.
The child in question was born in De-Ridder on October 5, 1959, and he was registered by the mother as the issue of the father. The child was thus born some seven months and six days (or 216 days in all) after the plaintiff and defendant had resumed living together as man and wife.
There was no concealment of the child's birth, nor is there any evidence whatsoever of any adultery on the part of the wife. The father's action to disavow his paternity of the child is primarily based upon the medical evidence indicating that the child born seven months after the reconciliation had been conceived nine months prior to the birth, that is, during the five-months separation when the wife was in California while the husband remained in DeRidder.
In addition to the medical evidence substantially showing that the child was not a premature baby at birth, the husband also relies upon the wife's testimony that she had conceived the child of her husband before she left for California in September, 1958, one year and five days (370 days) before the child was born in October, 1959. The medical evidence indicates that the birth of a human child so long a period after conception, is believed to be a medical impossibility.
The wife steadfastly denies ever having been unfaithful to her husband or ever having had intercourse with any other man. There is no evidence or indication to the contrary in the record, unless the birth of the child under the above circumstances is so regarded.
In a really scholarly opinion excellently summarizing the law and the facts, the trial court held that, under the evidence above set forth, the husband had overcome the presumption of the legitimacy of the child born during the marriage.

III.
As summarized by the Comment, "Action en Desaveu", 23 La.L.Rev. 759-760 (1963): "The Louisiana Civil Code has been thought to provide five separate grounds for an action en desaveu: [1] If the wife has committed adultery and concealed the child's birth from the husband; [2] if the child is born less than 180 days after marriage; [3] if the child is born 300 or more days after the dissolution of the marriage, [4] or separation from bed and board; [5] or if the `remoteness' of husband from wife has made cohabitation physically impossible."
The husband bases his disavowal suit upon the last of these grounds of disavowal, "remoteness" (LSA-C.C. Art. 189, set forth below). He contends that this ground is available whenever the medical and other evidence preponderantly proves that, at the time of the probable conception of the child, the husband and wife were so far separated that cohabitation was impossible.
On the other hand, the curator-appellant contends that remoteness is available as a ground for disavowal, only when it is proved that the husband and wife are thus remote from one another during an entire period of 180-300 days before the birth of the child. If cohabitation does take place between 180-300 days before birth, he contends, a virtually conclusive presumption of legitimacy attaches, and it is not sufficient *664 to produce medical evidence and other circumstances strongly suggesting that conception occurred at a time when the spouses were remote from one another.
The curator's argument is based upon a construction of the codal article (189) authorizing disavowal on the ground of remoteness, in its context within the codal scheme reflected by the entire group of codal articles regulating the disavowal action, LSA-C.C. Articles 184 through 192.
For convenient reference in the following analysis, we are setting forth, as an appendix to this opinion, the entire group of LSA-Civil Code Articles, 184 through 190, which regulate the substantive aspects of the action to disavow paternity. (LSA-C.C. Articles 191 and 192 further provide the short period within which the father must institute the disavowal action where applicable.)
As noted earlier, the husband's present disavowal action is based upon LSA-C.C. Article 189, which provides:
"The presumption of paternity as an incident to the marriage is also at an end, when the remoteness of the husband from the wife has been such that cohabitation has been physically impossible."
In examining the codal scheme represented by the entire group of LSA-Civil Code Articles 184 through 189 set forth in the appendix to this opinion, it can be seen that a child born less than 180 days after the marriage (Art. 186), or more than 300 days after the marriage's dissolution (Art. 187) or a judicial separation (Art. 188), is not presumed to be the child of the husband.
These codal articles speak of the 180-day and the 300-day period as dating from the marriage or the separation. The juristic scheme reflected by them, however, is to confer a presumption of legitimacy upon children born when the spouses have cohabited in a period of between 180 and 300 days prior to a child's birth. That is, in our opinion, a child is presumed legitimate just as much when born more than 180 days after cohabitation between long-married spouses of a still-existing marriage, as if born in the same interval following a new marriage.
This becomes very apparent when we examine the French codal provisions upon which are based the Louisiana Civil Code articles in question, and when we consider the underlying reasons behind adoption of the 180-day and 300-day presumptions relative to the legitimacy of children.
While the French Civil Code had no counterpart to Article 186 of the Louisiana Civil Code (providing that a child born 180 days after the marriage is presumed to be the husband's) or to Article 188 thereof (providing that the child born 300 days after a judicial separation is not presumed to be legitimate, in the absence of cohabitation), the basic concept of these articles is reflected by the French Civil Code Article 312. (The second sentence of this article is also the source of LSA-C.C. Article 189, the remoteness article set forth above.)
Article 312 of the French Civil Code provides (Claitor's 1960 edition of the 1804 English translation of the Code Napoleon): "An infant conceived during marriage claims the husband as his father. The latter, nevertheless, may disavow such child, on proof that during the time which has elapsed from the three hundredth to the one hundred and eightieth day previous to the birth of the infant, he was either, by reason of absence, or by the effect of some accident, under a physical incapability of cohabiting with his wife." (Italics ours.)
In the Planiol Civil Law Treatise (LSLI Translation, 1959), it is explained that the compilers of the Code deliberately extended somewhat the limits of pregnancy in order to favor legitimacy"They wanted to be certain that they did not deprive any legitimate child of its just due. And they also desired to have round figures which could be easily applied"; hence, they therefore, in accordance with the Roman law also, *665 fixed the legal duration of pregnancy as of at least 180 days and not more than 300 days. Planiol, Volume I, No. 1376.
Therefore, according to Planiol I, No. 1377:
"Conception is necessarily placed within the interval comprised between the two extremes assigned to pregnancy. This interval appears to be one of 120 days (300-180= 120). It is in reality one of 121 days. The law considers as a day upon which conception is possible the 180th day before birth. * * *
"It suffices that a single one of these 121 days fall during the marriage for the child to be deemed to be legitimate. The conception may have taken place on that day. It is impossible to show that it may have occurred at another moment. And the intent of the law is that, in case of doubt, the decision be always in favor of legitimacy.
"The presumption that the conception occurred on one of these 121 days is absolute. Proof would not be admissible to show that the child was born prematurely in order to show that the pregnancy could not have lasted 300 days. And evidence could not be heard to prove that the child was born normally in order to establish that the pregnancy had not lasted 180 days. * * *" (Italics ours.)
Planiol also states, at I, No. 1431, that, where the birth of the child is not hidden, "the disavowal is admitted only when there was physical impossibility of cohabitation between husband and wife during the entire time when conception was possible, that is to say from the 300th to the 180th day before the birth (Art. 312, § 2). Then only is it certain that the husband is not the child's father."
In our opinion, the LSA-Civil Code Article 189, providing that "the presumption of paternity * * * is also at an end, when the remoteness of the husband from the wife has been such that cohabitation has been physically impossible", is intended to have the same meaning as its French Civil Code counterpart, Article 312 quoted above. In context, the Louisiana paternity disavowal articles reflect the same underlying assumption as the French that, as a matter of law, a pregnancy may consist of any period between 180 and 300 days. Therefore, cohabitation at any time during this interval prior to birth, confers the usual presumption of legitimacy.
In short, remoteness is not a ground for disavowal under Article 189, unless the husband and the wife have been remote from one another during the entire period of 180-300 days prior to birth.
The construction of Article 189 is in accord with the late Dean Saunders's analysis of the Louisiana codal provisions. As he stated, "Again, the husband may disavow his paternity if he can prove that he was at such a remote distance from the wife as to make his paternity impossible. This remoteness must exist beyond the interval between the shortest and longest period of gestation as fixed by law, that is, the husband must show that he was so remote from his wife as to make his paternity impossible during the period extending from the 180th day to the 300th day prior to the birth of the child." Saunders, Lectures on the Civil Code of Louisiana (1925), p. 46.

IV.
In the case now before this court, the proof shows that the husband and wife cohabited together for a period commencing 216 days prior to the present baby's birth; that is, within the codal 180-300 day period prior to birth, during which cohabitation imports legitimacy as a matter of law. The child is thus legally presumed to be born of the marriage.
The husband's proof that he and his wife were remote during part of this period, and the evidence tending to show that the pregnancy commenced during this separation, is not sufficient to overcome the codal provisions constituting the birth, as a matter of *666 law, to be the result of the cohabitation of the spouses seven months prior to the child's birth. The husband has thus not borne his burden of proving his cause of action alleged under LSA-C.C. Article 189, to the effect that the usual presumption of paternity ends when the spouses have been so remote that cohabitation has been physically impossible at the time when the child was conceived.
For the foregoing reasons, the judgment of the trial court is reversed, and the plaintiff's action to disavow the paternity of his child is dismissed. All costs of these proceedings are to be paid by the plaintiff-appellee.
Reversed.

Appendix.
The Articles of the Civil Code applicable to the questions before the court are as follows:
LSA-C.C. Art. 184. "The law considers the husband of the mother as the father of all children conceived during the marriage."
LSA-C.C. Art. 185. "The husband can not by alleging his natural impotence, disown the child; he can not disown it even for cause of adultery, unless its birth has been concealed from him, in which case he will be permitted to prove that he is not its father." (Italics ours.)
LSA-C.C. Art. 186. "The child capable of living, which is born before the one hundred and eightieth day after the marriage, is not presumed to be the child of the husband; every child born alive more than six months after conception, is presumed to be capable of living."
LSA-C.C. Art. 187. "The same rule applies with respect to the child born three hundred days after the dissolution of the marriage, or after the sentence of separation from bed and board."
LSA-C.C. Art. 188. "The legitimacy of the sign, he put his ordinary mark to it, in aration from bed and board has been decreed, may be contested, unless it be proved that there had been cohabitation between the husband and wife since such decree, because it is always presumed that the parties have obeyed the sentence of separation.

"But in case of voluntary separation, cohabitation is always presumed, unless the contrary be proved." (Italics ours.)
LSA-C.C. Art. 189. "The presumption of paternity as an incident to the marriage is also at an end, when the remoteness of the husband from the wife has been such that cohabitation has been physically impossible."
LSA-C.C. Art. 190. "The husband can not contest the legitimacy of the child born previous to the one hundred eightieth day of marriage, in the following cases:
"1. If he was acquainted with the circumstances of his wife being pregnant previously to the marriage.
"2. If he was present at the registering of the birth or baptism of the child and signed the same, or if not knowing how to child born three hundred days after the septhe presence of two witnesses."

On Application for Rehearing.
En Banc. Rehearing denied.